

1301 K Street Northwest
Suite 500 East
Washington, DC 20005

**Alison Schary**

Tel. 202.973.4248
alisonschary@dwt.com

July 9, 2025

**VIA ECF**
The Honorable Theodore D. Chuang
U.S. District Court for the District of Maryland
6500 Cherrywood Lane, Suite 245
Greenbelt, MD 20770

    Re:    *DoubleVerify Holdings Inc. et al. v. Adalytics Research, LLC*, No. 8:25-cv-01535-TDC (D. Md. 2025): Notice of Intent to File Motion to Dismiss

Dear Judge Chuang:

    Pursuant to Rule II(A) of this Court's Case Management Order (ECF No. 16), Defendant Adalytics Research, LLC ("Defendant" or "Adalytics") submits this notice of intent to file a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and requests a pre-motion conference.

    Adalytics is a small digital media data science company. It has no investors and its sole full-time employee is its founder, who holds a Ph.D. in computational biology. Adalytics provides digital media data science and analytics services to advertisers and frequently publishes public-interest research reports on its website, based on its analysis of open-source data. Its research reports are cited by academics, members of Congress, and major news outlets. Plaintiff DoubleVerify Holdings Inc. is a publicly-traded advertising technology company with nearly 1,200 employees and over $650 million in revenue, and Plaintiff DoubleVerify Inc. is its wholly-owned subsidiary (together, "Plaintiffs" or "DoubleVerify"). DoubleVerify offers "pre-bid" ad solutions to customers, while Adalytics does not offer such services. ECF No. 1 ("Compl.") ¶ 33.

    Plaintiffs are suing over a 200+-page observational research report (the "Article") published by Adalytics on March 28, 2025, which details Adalytics' analysis of several large datasets of website traffic and presents its observations and findings from that research.[1] As the Article explains (and documents with screenshots), Adalytics observed code in these datasets indicating that major advertisers' ads had been served to bots, and further observed references in the code of those ads to ad-tech services affiliated with multiple major industry players. The highly technical Article concludes with a lengthy "Caveats and Limitations" section, which cautions against drawing unsupported inferences from its work and expressly disclaims making any recommendation as to "whether or not to transact with specific ad vendors or … publishers."

    Plaintiffs' lengthy complaint ignores the actual language of the Article and instead challenges allegedly defamatory "implications" from it. Plaintiffs incorrectly claim the Article

---

[1] Compl. ¶ 8 & n.3. The Article is titled *On pre-bid bot detection and filtration - Are ad tech vendors serving US Government and Fortune 500 brands' digital ads to bots?* and is available at https://adalytics.io/blog/prebid-bot-filtration.

portrays DoubleVerify's pre-bid ad services as "ineffective," and implies their customers are "regularly billed" for ads served on bots. Plaintiffs assert claims for false advertising, defamation, tortious interference, and unfair competition based on these allegedly defamatory implications and other cherry-picked statements in the Article.[2] All of these claims fail as a matter of law.

*First*, Plaintiffs cannot plead the elements of a false advertising claim. The Article is not a "commercial advertisement" under the Lanham Act; rather, it is fully protected by the First Amendment. Research and analytical reports do not constitute commercial speech where, as here, they "neither suggested that the reader buy any product or service, nor that they refrain from buying any product or service." *Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*, 189 F. Supp. 2d 271, 276 (D. Md. 2001) (rejecting Lanham Act claim over published review of medical device), *aff'd*, 48 F. App'x 42 (4th Cir. 2002); *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994) (scientific journal's publication of scientific-journal rankings was non-commercial speech). That Adalytics is a "for-profit" company whose website (where the Article is published) has a "contact" page for visitors to inquire about its work does not make the Article a "commercial advertisement." *See Tobinick v. Novella*, 848 F.3d 935, 951-52 (11th Cir. 2017) (doctor's blog posts analyzing and critiquing plaintiff's controversial medical claims were not actionable under Lanham Act, despite reference to defendant's medical practice). Nor does the Complaint identify an actionable false statement of fact, as discussed below.

*Second*, Plaintiffs fail to state a claim for defamation. Plaintiffs claim the Article portrays their pre-bid services as "ineffective" and implies that DoubleVerify customers are "regularly billed" for serving ads on bots. Compl. ¶ 51. But the Article says neither of these things, nor are they reasonable implications to be drawn from it. Defamation-by-implication claims like this one require an "especially rigorous showing": the challenged work "must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993) (affirming Rule 12(b)(6) dismissal of defamation-by-implication claims). Plaintiffs cannot make this showing—especially given that the "Caveats and Limitations" section expressly states that the Article does not assign "fault" to any particular stakeholder for an ad served on a bot (as many vendors are involved in the ad sales process and can override other stakeholders' decisions) and "does not recommend or advise any media buyers to exclude or block specific vendors, intermediaries, or sellers from future ad buys."

Even if Plaintiffs could conjure these implications from the Article, their defamation claim still fails. Plaintiffs do not challenge the authenticity of the underlying data (much of which is available on the open Internet) or the code that Adalytics observed and documented in the Article. Instead, they disagree with Adalytics' (alleged) ***inferences*** and ***interpretations*** of that data. Courts have repeatedly held that disputes surrounding scientific and technical opinions and interpretations of data are protected opinion and "not the sort of thing that courts or juries resolve in the context of a defamation action." *Arthur v. Offit*, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010). Such

---

[2] To the extent Plaintiffs are independently challenging these other statements (many of which deliberately mischaracterize the Article's plain language) (Compl. ¶¶ 55-56, 60-62), they are not actionable either because they are not "of and concerning" Plaintiffs, not defamatory, protected opinion, and/or not published with actual malice.

disputes must be resolved through "[m]ore papers, more discussion, better data, and more satisfactory models"—not by the "methods of litigation." *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994).[3]

Plaintiffs' defamation claim also fails because they do not and cannot allege Adalytics published the Article with actual malice, as required.[4] While DoubleVerify points generally to the January 10, 2025 "pre-buttal," they do not identify any specific facts from that publication that would render the Article knowingly false. Adalytics is not required to accept Plaintiffs' interpretation of facts or publish its preferred narrative. *See Westmoreland v. CBS Inc.*, 601 F. Supp. 66, 68 (S.D.N.Y. 1984) ("The libel law does not require the publisher to grant his accused equal time or fair reply."). And as the U.S. Supreme Court has held, adopting "one of a number of possible rational interpretations" of ambiguous facts cannot support actual malice—because it is not possible to show the defendant *knew* its interpretation was false. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) (citation omitted). To hold otherwise would allow Plaintiffs "to silence [their] adversaries in a public controversy," thereby "stifling debate." *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 718 (4th Cir. 1991).

*Finally*, Plaintiffs' remaining tort claims are based on the same statements and alleged injury as their failed defamation claim, and therefore must be dismissed along with it. *See, e.g., Allen v. Beirich*, 2021 WL 2911736, at *4 (4th Cir. July 12, 2021) (dismissing tortious interference and defamation claims based on same statements); *Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F. Supp. 1263, 1277 (D. Md. 1992) (same for injurious falsehood), *aff'd*, 989 F.2d 491 (4th Cir. 1993); *Yantha v. Omni Childhood Ctr., Inc.*, 2013 WL 5327516, at *7 n.3 (E.D.N.Y. Sept. 20, 2013) (same for unfair competition). Plaintiffs' claims also fail because the Complaint does not allege harm with the requisite specificity. *See Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 527 (D. Md. 2023).

The parties have conferred via email but were unable to resolve their disagreements. We look forward to discussing these issues at a conference. Should the Court authorize this motion without a conference, the parties jointly request a briefing schedule with 30 days for the opening brief, 30 days for opposition, and 14 days for reply.

    Respectfully submitted,

    /s/ *Alison Schary*
    Alison Schary

---

[3] These interpretations are also protected by Maryland's fair comment privilege. *See A.S. Abell Co. v. Kirby*, 176 A.2d 340, 342 (Md. 1961).

[4] Plaintiffs appear to concede they are public figures by reciting the actual malice standard in the Complaint. Compl. ¶ 85. Regardless, as a public company that voluntarily entered the debate (including by publishing its "pre-buttal"), Plaintiffs are at least limited public figures.