# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

|  |  |  |
|---|---|---|
| **DOUBLEVERIFY HOLDINGS INC.** and **DOUBLEVERIFY INC.** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 8:25-cv-1535-TDC |
| **ADALYTICS RESEARCH, LLC** | § | |
| *Defendant.* | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## PLAINTIFFS DOUBLEVERIFY HOLDINGS INC. AND DOUBLEVERIFY INC.'S OPPOSITION TO DEFENDANT ADALYTICS RESEARCH, LLC'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ....................................................................................................1

**BACKGROUND** ......................................................................................................2

    A. DoubleVerify's Dual-Layered Solutions for Invalid Traffic......................2

    B. Adalytics' Competing Business And Malicious Playbook. .........................5

    C. Adalytics' False And Misleading Article In This Case. ............................6

**LEGAL STANDARD** ...............................................................................................8

**ARGUMENT** ............................................................................................................9

**I.    DOUBLEVERIFY ALLEGES FACTS SUFFICIENT TO SUPPORT ITS DEFAMATION CLAIM.** .....................................................................................9

    A. DoubleVerify Sufficiently Alleges Express False Statements of Fact........9

    B. DoubleVerify Sufficiently Alleges Implied False Statements of Fact. .....10

        1. Adalytics Cannot Seek Dismissal On The Theory That It Did Not Intend Its False Implications. ........................................................11

        2. Adalytics' Buried, Generalized, and Generic Disclaimers Do Not Cure Its Defamation. ...............................................................12

    C. Adalytics' Falsehoods Are Not Protected "Opinion" ...............................14

    D. Adalytics' "Actual Malice" Argument Is Without Merit............................18

        1. DoubleVerify Is Not A "Limited-Purpose Public Figure," Particularly at the Pleadings Stage. ..................................................18

        2. DoubleVerify Sufficiently Alleges Facts Giving Rise to a Reasonable Inference of Actual Malice...........................................21

    E. Adalytics' "Of and Concerning" Argument Is Without Merit ...................24

**II.   DOUBLEVERIFY ALLEGES FACTS SUFFICIENT TO SUPPORT ITS LANHAM ACT CLAIM.** ....................................................................................25

    A. DoubleVerify Sufficiently Alleges That the Article Was a "Commercial Advertisement." ................................................................25

    B. DoubleVerify Alleges the Remaining Elements of a Lanham Act Claim.................28

**III.  DOUBLEVERIFY AMPLY ALLEGES ITS STATE-LAW CLAIMS.....................29**

    A. DoubleVerify States An Injurious Falsehood Claim. ...............................29

    B. DoubleVerify States An Unfair Competition Claim....................................29

    C. DoubleVerify Adequately Alleges Tortious Interference With Business Relations. ..30

**CONCLUSION** ......................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Dx, Inc. v. YourBio Health, Inc.*,
753 F. Supp. 3d 53 (D. Mass. 2024)...........................................................16, 17

*Apelbaum v. Bloom*,
2025 WL 1869578 (E.D. Va. July 7, 2025) ...................................................23

*AvePoint, Inc. v. Power Tools, Inc.*,
981 F. Supp. 2d 496 (W.D. Va. 2013)......................................................15, 28

*Batson v. Shiflett*,
602 A.2d 1191 (Md. 1992) .............................................................................11

*Bechtel v. St. Joseph Med. Ctr., Inc.*,
2012 WL 1476079 (D. Md. April 26, 2012) ..................................................30

*Bennett v. Zydron*,
2017 WL 9478505 (E.D. Va. Aug. 17, 2017) ................................................28

*Blue Ridge Bank v. Veribanc, Inc.*,
866 F.2d 681 (4th Cir. 1989)..........................................................................20

*Butowsky v. Folkenflik*,
2019 WL 3712026 (E.D. Tex. Aug. 7, 2019) .................................................23

*Calvin Klein Trademark Trust v. Wachner*,
129 F. Supp. 2d 248 (S.D.N.Y. 2001)............................................................20

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993).........................................................................12

*Church Ekklasia Sozo Inc. v. CVS Health Corp.*,
2022 WL 1572732 (W.D.N.C. Feb. 25, 2022) ..............................................28

*Colossus Media, LLC v. Adalytics Research, LLC*,
2025 WL 712986 (D. Md. Mar. 5, 2025)...................................................*passim*

*Connolly v. Lanham*,
685 F. Supp. 3d 312 (D. Md. 2023)............................................................2, 10

*Coomer v. Byrne*,
2025 WL 90097 (M.D. Fla. Jan. 14, 2025) ....................................................22

*Daniel v. Home Box Off., Inc.*,
　2023 WL 8478867 (D. Md. Dec. 7, 2023) ..................................................................9, 12

*Davis v. Avvo*,
　345 F. Supp. 3d 534 (S.D.N.Y. 2018) .............................................................................28

*Direct Benefits, LLC v. TAC Financial, Inc.*,
　2020 WL 2769982 (D. Md. May 28, 2020) ......................................................................13

*Elias v. Rolling Stone LLC*,
　872 F.3d 97 (2d Cir. 2017) ...............................................................................................24

*Elliott v. Bd. of Trs. of Montgomery Cnty. Cmty. Coll.*,
　104 Md. App. 93, 655 A.2d 46 (1995) .............................................................................14

*Eramo v. Rolling Stone, LLC*,
　209 F. Supp. 3d 862 (W.D. Va. 2016) .............................................................................15

*Foretich v. Capital Cities/ABC, Inc.*,
　37 F.3d 1541 (4th Cir. 1994)....................................................................................... 19, 20

*G.W. Aru, LLC v. W.R. Grace & Co.-Conn.*,
　761 F. Supp. 3d 827 (D. Md. 2025)............................................................................ 17, 18

*Gen. Steel Domestic Sales v. Chumley*,
　129 F. Supp. 3d 1158 (D. Colo. 2015)..............................................................................26

*Gilmore v. Jones*,
　370 F. Supp. 3d 630 (W.D. Va. 2019) ....................................................................*passim*

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*,
　721 F.3d 264 (4th Cir. 2013)............................................................................................25

*Groom v. Bombardier Trans. Servs. USA Corp.*,
　2017 WL 4947014 (D. Md. Oct. 31, 2017).......................................................................11

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
　193 F. Supp. 3d 556 (E.D. Va. 2016) ..............................................................................28

*Harte-Hanks Comm'cs, Inc. v. Cunnaughton*,
　491 U.S. 657 (1989) .........................................................................................................23

*Hatfill v. New York Times Co.*,
　416 F.3d 320 (4th Cir. 2005)............................................................................................14

*Iheakanwa v. Saks Fifth Avenue, LLC*,
　2022 WL 3919673 (D. Md. Aug. 30, 2022)..................................................................9, 11

*Interphase Garment Sols., LLC v. Fox Television Stations, Inc.*,
   566 F. Supp. 2d 460 (D. Md. 2008)...................................................................30

*Jankovic v. Int'l Crisis Grp.*,
   593 F.3d 22 (D.C. Cir. 2010) .........................................................................18

*Jenoff v. Hearst Corp.*,
   644 F.2d 1004 (4th Cir. 1981)........................................................................20

*Joseph v. Springer Nature*,
   2021 WL 1372952 (S.D.N.Y. Apr. 12, 2021) .................................................16

*Kale v. Alfonso-Royals*,
   139 F.4th 329 (4th Cir. 2025).........................................................................20

*Koolvent Aluminum Prods., Inc. v. Azrael, Gann & Franz*,
   52 F.3d 321 (4th Cir. 1995).......................................................................2, 13

*Larson v. Perry*,
   2020 WL 1495883 (D. Mass. Mar. 27, 2020) .................................................19

*Leask v. Robertson*,
   589 F. Supp. 3d 506 (D.S.C. 2022) ................................................................12

*Lifemd, Inc. v. Lamarco*,
   607 F. Supp. 3d 576 (W.D. Pa. 2022).............................................................13

*Lokhova v. Halper*,
   995 F.3d 134 (4th Cir. 2021) ....................................................................13, 14

*McGlothlin v. Hennelly*,
   370 F. Supp. 3d 603 (D.S.C. 2019) ................................................................19

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990).........................................................................................15

*Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*,
   2017 WL 3129799 (S.D.N.Y. July 21, 2017)............................................17, 26

*Moore v. Life Ins. Co. of N. Am.*,
   278 F. App'x 238 (4th Cir. 2008)......................................................................9

*Murdaugh v. Blackfin, Inc.*,
   2025 WL 561317 (D.S.C. Feb. 19, 2025) .......................................................24

*Nat'l Life Ins. Co. v. Phillips Publ'g, Inc.*,
   793 F. Supp. 627 (D. Md. 1992).........................................................19, 21, 27

*Nunes v. NBCUniversal Media, LLC*,
    643 F. Supp. 3d 403 (S.D.N.Y. 2022)....................................................................21

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013)......................................................................... 16, 17, 18

*Pacira BioSciences, Inc. v. Ventis Pharma, Inc.*,
    2025 WL 576549 (C.D. Cal. Jan. 17, 2025)................................................. 16, 17

*Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*,
    63 F.4th 240 (3d Cir. 2023) ...............................................................................16

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019)..............................................................................23

*Precision IBC, Inc. v. PCM Cap., LLC*,
    2011 WL 5444114 (S.D. Ala. Oct. 17, 2011)....................................................26

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) .............................................................18

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
    903 F.3d 415 (4th Cir. 2018)..............................................................................8

*Reynolds v. Pionear, LLC*,
    2016 WL 1248866 (E.D. Va. Mar. 25, 2016)....................................................16

*Rite Aid Corp. v. Lake Shore Investors*,
    471 A.2d 735 (Md. Ct. App. 1984).....................................................................29

*Rorie v. Bd. Of Educ. of Charles Cnty.*,
    2021 WL 4290872 (D. Md. Sept. 21, 2021)................................................. 15, 18

*Rounds v. Maryland-Nat. Capital Park & Planning Comm'n*,
    109 A.3d 639 (Md. Ct. App. 2015)......................................................................29

*Short v. Hartman*,
    87 F.4th 593 (4th Cir. 2023)................................................................................8

*Socol v. Albemarle Cnty. Sch. Bd.*,
    399 F. Supp. 3d 523 (W.D. Va. June 25, 2019).................................................15

*Solomon Foundation v. Christian Financial Resources, Inc.*,
    2023 WL 3058321 (D. Md. Apr. 24, 2023) ................................................. 12, 21

*Spirito v. Peninsula Airport Comm'n*,
    350 F. Supp. 3d 471 (E.D. Va. 2018) .............................................................22, 24

*Steele v. Goodman*,
382 F. Supp. 3d 403 (E.D. Va. 2019) ...................................................................21

*Sullivan v. Aircraft Servs. Grp., Inc.*,
2025 WL 676027 (E.D.N.Y. Mar. 3, 2025) ...........................................................15

*Tucker v. Fischbein*,
237 F.3d 275 (3d Cir. 2001) ..................................................................................24

*Veritas v. Cable News Network, Inc.*,
121 F.4th 1267 (11th Cir. 2024) ............................................................................21

*ZAGG, Inc. v. Catanach*,
2012 WL 4462813 (E.D. Pa. Sept. 27, 2012) ........................................................13

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) .................................................................................13

**Statutes**

Lanham Act ...............................................................................................................*passim*

**INTRODUCTION**

Through this litigation, DoubleVerify seeks redress for Adalytics' defamation, false and misleading statements, and Lanham Act violations.  Earlier this year, Adalytics published a defamatory article on its commercial website claiming DoubleVerify fails to prevent bot traffic at the "pre-bid" stage of programmatic advertising.  The article omits a core industry fact Adalytics knows well: DoubleVerify's systems filter bot traffic downstream via "post-serve" solutions, consistent with industry guidelines published by the Media Ratings Council.  Excluding that information made the article intentionally factually incorrect.  Adalytics published its article anyway to market its competing services and spark hostile press coverage toward DoubleVerify.

Courts have seen this playbook in the past, including in this very District.  In *Colossus Media, LLC v. Adalytics Research, LLC*, 2025 WL 712986 (D. Md. Mar. 5, 2025), Judge Chasanow denied Adalytics' motion to dismiss similar defamation, injurious falsehood, and Lanham Act violations.  Adalytics asserts that her opinion is "erroneous" and undeserving of persuasive weight.  *See* Adalytics Motion to Dismiss ("Mot.") at 24.  But *Colossus* is well-reasoned and maps onto many arguments Adalytics reprises here.  *Colossus* holds, among other things, that (i) Adalytics' expertise supports an inference of "actual malice," to the extent actual malice is necessary to allege defamation; (ii) Adalytics' articles published on a commercial website with the intent of promoting Adalytics' own services are "commercial speech" under the Lanham Act, and (iii) Adalytics overreaches in its demands for judicial notice at the pleadings stage.  *See Colossus*, 2025 WL 712986, at *10, *7–9, *4–6.  The Court should credit *Colossus* as persuasive.

The Court also should deny Adalytics' motion to dismiss in its entirety.  ***First***, Adalytics errs in claiming that DoubleVerify pleads only "libel by implication."  Mot. 10.  DoubleVerify sufficiently alleges express false statements.  Maryland law, in any event, also recognizes that defamation claims can rest on "implied false facts."  *Connolly v. Lanham*, 685 F. Supp. 3d 312,

339 (D. Md. 2023). Adalytics' attempt to avoid liability via buried disclaimers similarly fails—those disclaimers "do[] not directly disclaim" the substance of the defamation. *Koolvent Aluminum Prods., Inc. v. Azrael, Gann & Franz*, 52 F.3d 321 (4th Cir. 1995) (table).

**Second**, Adalytics cannot take refuge in constitutional protections. Its falsehoods included verifiable facts, not mere "opinion." Adalytics also published those falsehoods on a commercial website where it promotes its competing products, not a peer-reviewed academic journal. Adalytics' claim that DoubleVerify is a "limited purpose public figure" errs. And even if did not, DoubleVerify amply alleges that Adalytics acted with "actual malice," confirming that DoubleVerify's claims survive constitutional scrutiny.

**Third**, Adalytics' attempts to avoid Lanham Act liability fail for reasons capably explained in *Colossus*. Adalytics' website was commercial speech. *Colossus*, 2025 WL 712986, at *8. And Adalytics cannot credibly argue that DoubleVerify lacks a Lanham Act injury, where even its own brief admits that damage to "business reputation" is such an injury. Mot. 26.

**Fourth**, and finally, DoubleVerify sufficiently alleges each of its additional claims for injurious falsehood, unfair competition, and tortious interference with business relations. Adalytics' arguments against these claims repeat the same errors discussed above. DoubleVerify also establishes "special damages" and injuries for these claims, particularly where DoubleVerify pleads facts showing that it experienced pecuniary losses responding to Adalytics' attacks.

DoubleVerify alleges more than sufficient facts, taken as true, to establish the reasonable inference that Adalytics is liable for the claims alleged. Adalytics' motion should be denied.

## BACKGROUND

The following section recounts a portion of the well-pled facts alleged in the Complaint.

### A.    DoubleVerify's Dual-Layered Solutions for Invalid Traffic.

DoubleVerify is an industry leader in the ad verification business and "has nearly two

decades of experience in helping brands, agencies, and publishers verify that their digital advertising investments are delivered as intended." Compl. ¶ 23. DoubleVerify offers two key services. First, it "protects its customers' reputations by ensuring that their online advertisements are displayed on websites with content that aligns with their brand values." *Id.* ¶ 24. Second, "DoubleVerify protects its customers from online advertising-related fraud," including by protecting them for being billed for advertising impressions served to non-human invalid traffic, or "IVT." *Id.* "This lawsuit concerns DoubleVerify's fraud-protection service." *Id.*

There are two categories of IVT: "GIVT," or general IVT, and "SIVT," or sophisticated IVT. *Id.* ¶ 25. GIVT "includes traffic generated from automated sources, such as from search engine crawlers or auditing bots." *Id.* ¶ 26. GIVT "typically lacks malicious intent," and "can serve legitimate purposes, such as to index websites for searching or to test internet performance." *Id.* "However, if not appropriately filtered out, advertising impressions arising from GIVT can inflate an advertiser's charges and distort metrics like audience engagement." *Id.* SIVT, on the other hand, typically is malicious. "SIVT purveyors actively attempt to emulate a human user to avoid detection, making SIVT more difficult to identify than GIVT." *Id.* ¶ 27.

To provide advertisers with protection across both categories of IVT, "DoubleVerify employs a robust dual-layered system," which includes both "pre-bid" (upstream avoidance) and "post-serve" (downstream detection and deduction) solutions. *Id.* ¶¶ 28, 35.

***Pre-Bid Avoidance***: Internet advertisements generally are placed on websites via a "high-speed and highly automated auction-type process." *Id.* ¶ 29. "When a user visits a webpage, the website's publisher sends out a request for bids to various Demand-Side Platforms," who "allow advertisers to make and manage bids for impressions, in coherence with their overall advertising campaign objectives and certain other parameters." *Id.* The platforms rapidly submit "bids" for

the privilege of advertising to the visitor, and the winning "bids" result in advertisements being loaded on the website. *Id.* ¶ 30. DoubleVerify's "pre-bid" solutions filter out non-human traffic at this "pre-bid" stage by "analyzing data included with requests for bids and blocking customers from bidding on impressions that arise from IVT." *Id.* ¶ 31. Pre-bid solutions are helpful particularly in addressing non-malicious GIVT. DoubleVerify's pre-bid solutions prevent customers from being charged for "99% of unwanted GIVT impressions." *Id.*

***Post-Serve Solutions***: DoubleVerify also offers "post-serve IVT solutions." *Id.* ¶ 33. Post-serve solutions work by identifying IVT impressions after the bid stage, so that the advertiser can "seek compensation from the seller of the ad placement." *Id.* ¶ 34. Post-serve solutions are particularly helpful in addressing malicious SIVT, which sometimes "may not be caught at the pre-bid stage because [SIVT bots] are often deliberately masked to avoid detection." *Id.* ¶ 32.

"DoubleVerify's customers can use DoubleVerify's pre-bid (avoidance) and its post-serve (detection and deduction) systems separately or integrate them into a suite of services." *Id.* ¶ 35. When combined, pre-bid and post-serve solutions are effective: "when pre-bid avoidance is enabled, IVT impressions from known (self-declared) bots make up, on average, less than 0.03% of the programmatic advertising impressions served to DoubleVerify customers," and "[v]irtually all of the remaining IVT impressions are then effectively detected by DoubleVerify at the post-serve stage through either removal from the customer's billable counts (for GIVT) or flagging for subsequent reimbursement (for SIVT)." *Id.* ¶ 37.

The fact that customers may mix-and-match pre-bid and post-serve solutions has another important implication: it means that "the presence of DoubleVerify's code" on a webpage that purportedly serves ads to bots does ***not*** mean that the advertising customer necessarily actually pays for those bots. *Id.* ¶ 33. Rather, "the presence of DoubleVerify code on these pages could be

for a number of reasons." *Id.* If a DoubleVerify customer has only post-serve solutions enabled, for example, then a website may serve the customers' ads to bots—even though those impressions are then "detect[ed] and report[ed]" on the backend, so that they can be removed from the customers' billable counts and/or flagged for subsequent reimbursement. *Id.* ¶¶ 33–34.

### B.    Adalytics' Competing Business And Malicious Playbook.

"Adalytics is a for-profit company," and an "unaccredited and unaudited 'ad-tech' vendor" that, although employing limited resources and staff, "competes with DoubleVerify." *Id.* ¶¶ 6, 42.

Adalytics has a long history of smearing other companies in the advertising industry "in an attempt to grow its own business." *Id.* ¶ 43. Adalytics purports to publish "research" reports, which consist of "cherry-picking an exceedingly small number of impressions from data it scrapes from a small sample of bot logs," a technique "prone to error, bias, and data manipulation." *Id.* ¶ 6. Adalytics "spins its 'analysis' of an anecdotal number of impressions into a narrative targeting advertising industry participants" to "promote its own platform to advertisers." *Id.* (discussing Adalytics' "malicious playbook"). After Adalytics published a misleading blog post about Google, for example, Google observed that Adalytics' "business interest lies in creating distrust and gaining attention with reports, even flawed or inaccurate ones." *Id.* ¶ 45.

Adalytics also targeted another company, Colossus, with a malicious article accusing Colossus of "altering data concerning website visitors at the pre-bid stage to make the impressions 'higher value' and to allegedly generate more revenue." *Id.* ¶ 44. Independent media characterized the article as "a hit-piece masked as a research report." *Id.* ¶ 44 & n.6. But Colossus refused to be a passive victim. Colossus sued, bringing federal Lanham Act and common-law Maryland defamation and injurious falsehood claims. *Colossus*, 2025 WL 712986, at *1. Colossus alleged that Adalytics "portrayed Colossus SSP as mis-declaring user IDs in its bid requests for the purpose of selling ad space at higher prices to ad buyers seeking to serve advertisements to a targeted

audience," and that Adalytics "actively worked to amplify these false statements in the marketplace in an attempt to destroy Colossus SSP's business and reputation." *Id.* at *2–3.

On March 5, 2025, Judge Chasanow denied Adalytics' motion to dismiss, holding that Colossus had "plausibly alleged a violation under the Lanham Act," and "sufficiently alleged injurious falsehood" as well as "a defamation claim under Maryland law." *Id.* at *9-11.

**C.    Adalytics' False And Misleading Article In This Case.**

Adalytics began implementing its malicious playbook against DoubleVerify in or around December 2024, when it disseminated a draft article concerning DoubleVerify and other industry participants to certain media outlets. Compl. ¶ 46. DoubleVerify learned of the article only on January 3, 2025, when a media outlet contacted DoubleVerify. *Id.* ¶ 47. On January 10, 2025, DoubleVerify published a press release entitled *Setting the Record Straight: Addressing Adalytics' Continued Misleading Claims*, which "outlined detailed responses" to the claims DoubleVerify understood Adalytics would make in its forthcoming article. *Id.* ¶¶ 48–49.

DoubleVerify's statement gave Adalytics notice that its forthcoming article would be false and misleading. *Id.* ¶ 49. DoubleVerify's statement, for example, explained that Adalytics could not "cast doubt on the efficacy of pre-bid fraud solutions from DV and other ad verification providers," without also informing readers of "post-bid measurement," which might filter out purported IVT traffic. *See* Mot. Ex. E at 2. DoubleVerify explained that "[s]ome media-buying platforms support pre-bid solutions, while others do not," and "pre-bid activation may be applied to a small portion of a campaign or adjusted based on specific client settings and technical factors unique to each advertiser." *Id.* And DoubleVerify observed that if an ad from one of its customers "were to serve to a GIVT bot," then DoubleVerify's post-serve solutions, consistent with industry standards, would allow for this impression to "be removed from reporting and [for the] advertisers not [to be] charged for that impression." *Id.* at 1.

Adalytics nevertheless published its article on March 28, 2025.  Compl. ¶¶ 8, 50.  The article was published on Adalytics' commercial, publicly-available website (http://adalytics.io), which it uses to advertise its competing services.  *Id.* ¶ 72.  The website is used for commercial and "marketing purposes"—the "homepage of that site advertises Adalytics' services and invites users to provide contact information to learn more about those services."  *Id.* ¶¶ 6, 72.  The article contained false and misleading statements disparaging DoubleVerify, Adalytics' competitor.  The article's theme is that "DoubleVerify's services are ineffective and that DoubleVerify's customers routinely pay for advertising impressions that are served to robotic agents ('bots'), referred to as invalid traffic ('IVT'), rather than to genuine human consumers."  *Id.* ¶ 1.

Adalytics reached this purported research "conclusion" only by following its playbook of cataloguing a non-random sample of bot traffic on websites containing DoubleVerify code—thereby conveying the false impression that DoubleVerify had failed to appropriately handle the bots—even though Adalytics knew that DoubleVerify's code could be on websites for numerous reasons, including because customers enabled post-serve rather than pre-bid solutions.  *See* Background at A.  Adalytics' attempts to cast these websites with DoubleVerify code as failing to catch IVT traffic were false—"[i]n every example cited by Adalytics in its Article as purported evidence of failure for which DoubleVerify was able to identify the impression from its records, DoubleVerify has confirmed that it detected the invalid impression downstream and therefore ensured the impressions served to GIVT were removed from the customer's billable impression count and, in the case of SIVT, were properly flagged to customers."  Compl. ¶ 3.

Adalytics actively coordinated with media outlets, including *The Wall Street Journal*, to amplify its false statements.  *Id.* ¶¶ 12, 65–67.  Adalytics thus caused *The Wall Street Journal* to repeat Adalytics' false claims, summarizing Adalytics' article as conveying the falsehood that

DoubleVerify "regularly miss[es] nonhuman traffic."[1]

Adalytics' falsehoods harmed DoubleVerify. DoubleVerify alleges that Adalytics' statements "were intended to damage DoubleVerify's business and reputation for the purpose of gaining a competitive advantage." *Id.* ¶ 75. The statements "caused and continue[] to cause [DoubleVerify] financial harm." *Id.* ¶ 69. DoubleVerify also has been "forced to divert substantial resources toward countering Adalytics' misinformation, including (a) the development of multiple comprehensive, public responses to Adalytics' false statements; (b) efforts to engage with media outlets to correct the public record; and (c) expenditure of significant employee time and resources to respond to inquiries from existing and potential customers and stockholders regarding Adalytics' false statements." *Id.* "DoubleVerify would not have incurred these expenses but for Adalytics' publication of its false and misleading statements." *Id.*

## LEGAL STANDARD

A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018). The plausibility standard requires more than "a sheer possibility" of wrongdoing but is "not akin to a probability requirement." *Short v. Hartman*, 87 F.4th 593, 603 (4th Cir. 2023) (quotations omitted) (reversing dismissal). In reviewing a motion to dismiss, courts should "accept all facts pled in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Id.* (quotations omitted). The purpose of a motion to dismiss merely is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Moore v. Life Ins. Co. of N. Am.*, 278 F. App'x 238, 239 (4th Cir. 2008) (reversing dismissal).

---

[1] *See* Declaration of Ronald K. Anguas, Jr. ("**Anguas Decl.**"), Ex. A.

## ARGUMENT

## I.    DOUBLEVERIFY ALLEGES FACTS SUFFICIENT TO SUPPORT ITS DEFAMATION CLAIM.

DoubleVerify alleges more than sufficient facts to support its defamation claim (Count 2) at this stage.  Adalytics gives short shrift to allegations showing both express and implied false statements of fact, and Adalytics' constitutional arguments are without merit.

### A.    DoubleVerify Sufficiently Alleges Express False Statements of Fact.

Defamation under Maryland law requires: (1) a defamatory statement to a third party; (2) falsity; (3) fault; and (4) harm.  *Daniel v. Home Box Off., Inc.*, 2023 WL 8478867, at *10 (D. Md. Dec. 7, 2023).  A statement may be defamatory if it "discourag[es] others in the community from having a good opinion of, or associating with, that person."  *Id.*  Defamation may occur where defamatory character can be imputed "from the words themselves" (defamation *per se*), and where "extrinsic facts" may show defamation through "context or innuendo" (defamation *per quod*). *Iheakanwa v. Saks Fifth Avenue, LLC*, 2022 WL 3919673, at *4 (D. Md. Aug. 30, 2022).

Adalytics' motion to dismiss errs by ignoring allegations of express false statements of fact, including statements damaging DoubleVerify's business reputation.  In Adalytics' view, the "Complaint does not challenge any actual statements in the Report that are allegedly defamatory of DoubleVerify," and DoubleVerify "is alleging" only "libel by implication."  Mot. 8, 10.  But while DoubleVerify alleges facts to support an implied defamation claim, *see* Part I.B, *infra*, Adalytics ignores that DoubleVerify also alleges express false statements of fact, specifically:

- "A list of 49 publishers ('and many others') utilizing DoubleVerify's publisher optimization tools 'have been serving ads on behalf of Fortune 500, United States Government, or other advertisers to bots.'"  Compl.  ¶ 51.  DoubleVerify alleges that Adalytics states that DoubleVerify is providing ineffective services to specific customers, which "is a false, inflammatory, and malicious statement."  *Id.* ¶ 62.

- "[A]dvertisers were billed by ad tech vendors for ad impressions served to declared bots operating out of known data center server farms."  *Id.* ¶ 51.  The statement that advertisers

"were billed" for bots is false, as it causes the reader to believe that advertisers actually "were billed" or paid for these purported bots, even though the bots in fact were removed from bills via post-serve solutions.[2]

- "[A]ds were served to [URLScan bot,]" which the Article labeled as a "declared bot in data centers." Compl. ¶ 57. DoubleVerify alleges that this statement is "demonstrably false": "[t]he URLScan bot does not typically 'declare' itself as a bot when visiting webpages." *Id.*

- Adalytics presents numerous "screenshots as showing impressions served by DoubleVerify customers, based on the presence of certain DoubleVerify code on those webpages," even though Adalytics knew that code did not mean the websites were using DoubleVerify pre-bid solutions. *Id.* ¶ 58; *see also id.* ¶ 33.

- "In at least 75 different instances throughout the Article, Adalytics erroneously attributes source code authored by [other parties] to DoubleVerify, to suggest that DoubleVerify 'had [brands'] ads served to bots in data centers." *Id.* ¶ 59. Adalytics knew or should have known that the source code at issue was not DoubleVerify's. *Id.*

Each of these statements is an express, not just implied, statement that DoubleVerify alleges is false. Compl. ¶¶ 51–63.

## B. DoubleVerify Sufficiently Alleges Implied False Statements of Fact.

Additionally, and in the alternative, DoubleVerify also pleads facts supporting a claim for defamation resting on implied false statements. Courts repeatedly have denied motions to dismiss where "defamatory facts [are] implied by a statement." *See*, *e.g.*, *Iheakanwa*, 2022 WL 3919673, at *7; *Connolly v. Lanham*, 685 F. Supp. 3d 312, 339 (D. Md. 2023) (denying dismissal, where party "alleged, at a minimum, that [party's] statements relied upon or implied false facts"). "A mere inference, implication, or insinuation is as actionable as a positive assertion if the meaning is plain." *Groom v. Bombardier Trans. Servs. USA Corp.*, 2017 WL 4947014, at *6 (D. Md. Oct. 31, 2017); *see also Iheakanwa*, 2022 WL 3919673, at *7 ("[W]here a plaintiff has alleged a

---

[2] Adalytics asserts that the text of this statement was: "impression level log file data and financial invoices suggested that advertisers were billed …" and that the phrase "suggests that" cures its falsity. Mot. 19. But even if the Court were to take judicial notice of the phrase "suggests that" (a matter under dispute), Adalytics still was misleading in asserting that this data "suggest[ed]" anything given likely post-serve solutions and the many reasons why code might exist on a website.

statement that could reasonably be construed as implying false, defamatory facts, the plaintiff has plausibly alleged falsity."). The meaning of Adalytics' article is a jury question where multiple readings are possible. *See Batson v. Shiflett*, 602 A.2d 1191, 1210–11 (Md. 1992).

DoubleVerify's allegations establish well-pled false implications at this stage. The Complaint alleges Adalytics' overarching false implication: Adalytics "clearly impl[ies] that DoubleVerify's customers are regularly billed for GIVT impressions," and "impl[ies] that DoubleVerify customers [we]re affected by rampant ad fraud." Compl. ¶¶ 51, 60. Adalytics achieves this false implication by asserting that GIVT impressions are "served" to DoubleVerify's customers, *id.* ¶ 59, and by claiming that "advertisers were billed" for "impressions served to declared bots," *id.* ¶ 51, while omitting that DoubleVerify filters out these impressions at the ***post-serve*** stage. *See* Background at A, *supra*; *see also* Compl. ¶ 53 (for all of Adalytics' cited impressions DoubleVerify was able to verify, those impressions were "effectively detected … at the post-serve stage"). Taking these allegations as true, the article easily "could reasonably be construed as implying false, defamatory facts." *Iheakanwa*, 2022 WL 3919673, at *7.

1.    **Adalytics Cannot Seek Dismissal On The Theory That It Did Not Intend Its False Implications.**

Adalytics asserts that DoubleVerify's implied defamation claims fail because, in its view, implied defamation claims are subject to an "especially rigorous" intent standard. Mot. 10. Adalytics asserts that DoubleVerify fails to allege that Adalytics "intend[ed] or endors[ed]" its defamatory implications. *Id.* (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93, 1110 (4th Cir. 1993)).

This argument errs for multiple reasons. To begin, Adalytics is wrong in asserting that an "especially rigorous" state-of-mind requirement applies to DoubleVerify's implied defamation claims. In cases between private parties, showing that a party is at fault for defamation requires

only that the defendant have "acted negligently." *Solomon Foundation v. Christian Financial Resources, Inc.*, 2023 WL 3058321, at *6 (D. Md. Apr. 24, 2023). The *Chapin* decision, meanwhile, required an "especially rigorous" showing of intent only "where the expressed facts [we]re literally true." 993 F.2d at 1093. DoubleVerify alleges express ***false*** statements of fact, however, *see* Part I.A, and so "*Chapin* is indeed inapposite." *Leask v. Robertson*, 589 F. Supp. 3d 506, 525 (D.S.C. 2022); *see also Daniel*, 2023 WL 8478867, at *17 ("Unlike the plaintiff in *Chapin*, plaintiff in this case does not allege that the defamatory meaning of the Scene arises from 'literally true' depictions or statements of fact.").

DoubleVerify's allegations also are sufficient to meet the *Chapin* standard, if that standard applied. DoubleVerify's allegations show that Adalytics intended and endorsed its defamatory implications: those defamatory implications were the whole point. Adalytics' "business interest" is to "instill doubt" about competitors, and Adalytics intended that effect. Compl. ¶¶ 8, 45. Adalytics, moreover, knew that its false implications were false, including because DoubleVerify's press release alerted it to falsity in advance and because Adalytics had the "expertise in advertising technology to understand its falsity." *Id.* ¶ 85; *see also* Part I.D.2, *infra*.

### 2. Adalytics' Buried, Generalized, and Generic Disclaimers Do Not Cure Its Defamation.

Adalytics also argues that Adalytics purportedly disclaimed and "express[ly] disavow[ed]" its defamatory implications. Mot. 11. In Adalytics' view, it "caution[ed] readers ***against*** using its observational research findings to assess any particular vendors' services," citing boilerplate disclaimers buried on pages 280 and 281 of its 290-page article.[3] *Id.* (citing *Lokhova v. Halper*,

---

[3] Adalytics' reliance on purported disclaimers in the article also wrongly reaches beyond the pleadings at the dismissal stage. Adalytics argues that the Court may take notice of the article because it is "integral to DoubleVerify's claims." Mot. 1 n.1. But there were draft versions of

995 F.3d 134, 146 (4th Cir. 2021)).[4]

These disclaimers do not entitle Adalytics to dismissal.  Although a sufficiently direct disclaimer may clarify defamatory inferences inadvertently arising from an article, *see Lokhova*, 995 F.3d at 146, the Fourth Circuit and other courts have cautioned that disclaimers are ineffective if they are "too oblique to place the other [statements] into a neutral context" or "do[] not directly disclaim" the defamatory inference.  *See Koolvent Aluminum Prods., Inc. v. Azrael, Gann & Franz*, 52 F.3d 321 (4th Cir. 1995) (table); *see also Direct Benefits, LLC v. TAC Financial, Inc.*, 2020 WL 2769982, at *13 (D. Md. May 28, 2020) ("broadly" phrased cautionary language in securities context did not warrant dismissal); *Lifemd, Inc. v. Lamarco*, 607 F. Supp. 3d 576, 594 (W.D. Pa. 2022) (disclaimers are not "a talismanic word formula" requiring automatic dismissal); *ZAGG, Inc. v. Catanach*, 2012 WL 4462813, at *3 (E.D. Pa. Sept. 27, 2012) (denying dismissal).  Adalytics' disclaimers were "too oblique" here.  They were written in general terms, stating, *e.g.*, that Adalytics does not "recommend or advise any media buyers to exclude or block specific vendors," and that Adalytics was not "mak[ing] any assertions with regards to quantitative impact" or "how many total ads were served via specific bots."  Mot. 11.  Another disclaimer asserted that bot impressions could be attributable to actions by third parties, such that "[o]ne should not assume that because a given ad tech vendor or vendors transacted a given ad to a bot that those vendors are somehow responsible or 'at fault' for the ad being served to a bot."  *Id.*  Missing from all this is anything addressing Adalytics' core falsehood: its intentional omission that DoubleVerify cures

---

Adalytics' article, Compl. ¶¶ 1, 7, 46, 85, 93, and it is unclear which version Adalytics attached.  *See Colossus*, 2025 WL 712986, at *5–6 (declining judicial notice).

[4] The Court also should decline judicial notice of Adalytics' Exhibits B, C, D, F, G, and H, none of which are mentioned in the Complaint.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (vacating dismissal, where "district court should not have considered" documents not "an integral part of" the complaint).

bot impressions via **post-serve** solutions, and that dozens of bot-impressions Adalytics attributes to DoubleVerify were, in fact, cured by exactly those post-serve solutions.  Compl. ¶ 3.

None of Adalytics' disclaimers addressed *that* issue, which is at the center of Adalytics' falsehoods.  Adalytics cites no case granting dismissal on account of general disclaimers not actually addressing the defamation.  *Lokhova* is no such case—there, the article did not even "create a reasonable implication" of defamation to begin with, and it included a statement that the plaintiff and others had "denied that anything inappropriate occurred."  995 F.3d at 146.  Thus, in *Lokhova*, not only was there no defamatory implication, but the disclaimer, in any event, directly addressed that purported implication.  *Id.*

The above is more than enough to reject Adalytics' disclaimer argument at this early stage.  The disclaimers never confront the central omission—post-serve remediation—and they were tucked into pages 280–281 of a 290-page article.  *See Elliott v. Bd. of Trs. of Montgomery Cnty. Cmty. Coll.*, 104 Md. App. 93, 106, 655 A.2d 46, 52 (1995) (disclaimer at end of employment manual was not "sufficiently conspicuous").  Adalytics' disclaimers here do not specifically address Adalytics' falsehoods and were buried under hundreds of pages, underscoring that they do not undermine Adalytics' intent or cure the defamatory inferences Adalytics intended.

**C.    Adalytics' Falsehoods Are Not Protected "Opinion"**

Labeling assertions as "opinion" does not immunize false factual claims.  *Hatfill v. New York Times Co.*, 416 F.3d 320, 333 (4th Cir. 2005) (reversing dismissal).  "Since expressions of 'opinion' can often imply an assertion of objective fact, the U.S. Supreme Court has refused to create a wholesale defamation exemption for anything that might be labeled 'opinion.'"  *Gilmore v. Jones*, 370 F. Supp. 3d 630, 670–71 (W.D. Va. 2019) (quotations omitted) (discussing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)).

Adalytics' defamatory statements are not protected opinion here for three reasons.

14

*First*, Adalytics' statements included and implied objectively verifiable statements of fact. "[F]actual statements made to support or justify an opinion ... can form the basis of an action for defamation." *Gilmore*, 370 F. Supp. 3d at 670–71; *see also Rorie v. Bd. Of Educ. of Charles Cnty.*, 2021 WL 4290872, at *11 (D. Md. Sept. 21, 2021) (denying dismissal, where purported opinion implied untrue facts); *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 876 (W.D. Va. 2016) ("factual statements made to support or justify an opinion can form the basis of an action for defamation"); *Socol v. Albemarle Cnty. Sch. Bd.*, 399 F. Supp. 3d 523, 544 (W.D. Va. June 25, 2019) (denying dismissal in part, where purported opinion "may have implied an assertion of fact"); *see also Sullivan v. Aircraft Servs. Grp., Inc.*, 2025 WL 676027, at *13 (E.D.N.Y. Mar. 3, 2025) (denying dismissal where purported opinion conveyed verifiable facts). Here, Adalytics' statements are based on and convey objectively verifiable (false) statements or implied statements of fact, including statements that DoubleVerify served ads to bots, and that DoubleVerify was responsible for customers being "billed" for those ads, Compl. ¶¶ 51–63, even though they were addressed at the post-serve stage, *id.* ¶ 2.

These statements are factual and so are not protected expressions of opinion. In *AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496 (W.D. Va. 2013), for example, another district court in this Circuit rejected the argument that "customers are dumping out of 3 year deals in year 2 to buy [a company]'s [product]" was only an opinion statement. *Id.* at 508–509. "Instead, the statement contains a factual assertion that is capable of being proven true or false." *Id.* The same is true of Adalytics' factual assertions regarding whether DoubleVerify served ads to bots and whether DoubleVerify protected its customers here.

*Second*, to determine whether statements are protected opinion, courts in this Circuit and elsewhere consider "the context and general tenor of the statement." *Reynolds v. Pionear, LLC*,

2016 WL 1248866, at *4 (E.D. Va. Mar. 25, 2016) (collecting cases); *see also Advance Dx, Inc.*
*v. YourBio Health, Inc.*, 753 F. Supp. 3d 53, 63 (D. Mass. 2024) (denying dismissal in great part,
after "tak[ing] into account the statement's context, including the medium in which the statement
was published and the audience to which it was presented").  Courts are particularly likely to find
that statements are opinion when, rather than being published on commercial marketing websites,
their "context" includes publication in peer-reviewed journals aimed at academic audiences.  *See*,
*e.g.*, *Pacira BioSciences, Inc. v. Ventis Pharma, Inc.*, 2025 WL 576549, at *9–10 (C.D. Cal. Jan.
17, 2025) (discussing peer review).

Adalytics wrongly and misleadingly relies on cases considering this inapplicable context
here.  *See* Mot. 12 (collecting cases).  In *Joseph v. Springer Nature*, 2021 WL 1372952 (S.D.N.Y.
Apr. 12, 2021), for instance, the plaintiff was a scientist "who claim[ed] he found evidence of
possible extraterrestrial life on Venus and Mars," and sued the publishers of "an academic journal
called *Astrophysics and Space Science*" when they "told [him] that [they] would retract the article"
"after conducting additional peer review."  *Id.* at *1.  In *Pacira BioSciences, Inc. v. Am. Soc'y of
Anesthesiologists*, Inc., 63 F.4th 240 (3d Cir. 2023), the plaintiff "sued the American Society of
Anesthesiologists" and "the editor-in-chief of its medical journal," complaining about its "peer-
reviewed" articles.  *Id.* at 240–44.  And *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490
(2d Cir. 2013), on which Adalytics heavily relies, Mot. 12–13, is more of the same.  *ONY*
considered findings published in "a peer-reviewed journal … the *Journal of Perinatology*, the
leading journal in the field of neonatology, which is the study of newborn infants."  *Id.* at 493–94.
The plaintiff tried to leverage the peer-review process as evidence, complaining that one reviewer
had voted against publication.  *Id.* at 494.  The Second Circuit's opinion, unsurprisingly, leaned
heavily on the special context of academic publications: "it is the essence of the scientific method

16

that the conclusions of empirical research are tentative and subject to revision, … those conclusions are presented in publications directed to the relevant scientific community, ***ideally in peer-reviewed academic journals*** that warrant that research approved for publication demonstrates at least some degree of basic scientific competence." *Id.* at 496–97 (emphasis added).

That context is nothing like Adalytics' "research" published on a non-peer-reviewed, commercial website. That website was intended to attract new customers and advertise Adalytics' competing services. *See* Compl. ¶¶ 6, 43–45, 72. Courts repeatedly reject defendants' attempts to rely on cases like *Pacira* or *ONY* where, as here, the context of their factual assertions is a commercial website or article, not a peer-reviewed journal. As the court put it in *Advance Dx Inc.*, *ONY* "is of no help to [Adalytics] … we must take into account the statement's context," and here, "the medium in this case is not meant to communicate insights into matters of scientific debate," and so "is not purely scientific." 753 F. Supp. 3d at 63–64 (denying dismissal); *see also Pacira BioSciences, Inc.*, 2025 WL 576549, at *9–10 (same, and distinguishing the Third Circuit's *Pacira* decision, where the statement was not "published in a scholarly journal"); *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, 2017 WL 3129799, at *7–8 (S.D.N.Y. July 21, 2017) (same, where statements aimed to "tout the benefits of Defendants' product over Plaintiffs' competing product," and were "principally directed to a consumer audience, not a scientific one"). Proving the point, *ONY* even has been distinguished in this District: in *G.W. Aru, LLC v. W.R. Grace & Co.-Conn.*, 761 F. Supp. 3d 827 (D. Md. 2025), the court rejected a Lanham Act defendant's assertions that its false "comparative performance" claims were subjects of legitimate debate, noting that unlike in *ONY*, the purported "analysis was not published in a peer-reviewed scientific journal, but rather in a trade magazine and on its own website." *Id.* at 847 n.10.

So too here. Context matters when determining whether the false facts Adalytics has stated

17

and implied are protected—and here, context weighs in favor of holding that they are not.

***Third***, and finally, Adalytics' own citations show that opinions are protected only where they are "based on fully disclosed facts." *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1021 (N.D. Cal. 2017); *see also Rorie*, 2021 WL 4290872, at *11 (opinions protected "[w]hen the bases for the conclusion are fully disclosed"). "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22, 28 (D.C. Cir. 2010) (reversing dismissal in part).

This exactly is the problem with Adalytics' article—Adalytics did ***not*** disclose crucial facts about the ad verification industry, including that many bot impressions (like SIVT bot impressions) are addressed by services operating at the post-serve, not pre-bid, stage. *See* Background at A, *supra*. Adalytics' failure to disclose these facts is a critical reason why its article was misleading, and underscores why protections for fully-disclosed academic opinions do not apply in this case.

## D.    Adalytics' "Actual Malice" Argument Is Without Merit.

Adalytics' "actual malice" arguments are equally misplaced. Mot. 13–18. DoubleVerify is not a "limited purpose public figure" (and that issue is not susceptible to resolution on a motion to dismiss), and so the actual-malice standard does not apply. Even if that standard did apply, DoubleVerify pleads facts sufficient to show actual malice here.

### 1.    DoubleVerify Is Not A "Limited-Purpose Public Figure," Particularly at the Pleadings Stage.

To determine whether a party is a "limited purpose public figure," courts consider whether:

(1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in a public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statements; and (5) the plaintiff retained public figure status at the time of the alleged defamation.

Mot. 14; *see also*, *e.g.*, *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1553 (4th Cir. 1994) (similar). Courts should "proceed upon the initial presumption that the defamation plaintiff is a private individual, subject to the defendant's burden of proving that the plaintiff is a public figure," before applying an actual-malice standard. *Foretich*, 37 F.3d at 1553. Whether a defendant can carry its burden on this multi-factor test is poorly suited to resolution on a motion to dismiss. *See McGlothlin v. Hennelly*, 370 F. Supp. 3d 603, 617 (D.S.C. 2019) (denying dismissal, where whether a party is a limited-purpose public figure "is a question more appropriate for a summary judgment motion after discovery has been conducted"). Some courts find the test is so "inescapably fact-specific … that it does not always lend itself to *summary judgment*," much less dismissal. *Larson v. Perry*, 2020 WL 1495883, at *7 (D. Mass. Mar. 27, 2020) (quotations omitted).

Adalytics falls short of carrying its burden to show that DoubleVerify is a limited-purpose public figure here. Adalytics wrongly asks that the Court give ***Adalytics*** the benefit of inferences on a motion to dismiss, and its arguments stretch beyond the facts alleged in the Complaint.

The first factor does not support Adalytics' position at this stage. Adalytics asserts that "DoubleVerify clearly has access to … 'channels of effective communication'" because "the Complaint cites multiple press releases it issued about the Report, both before and after publication." Mot. 14. But Adalytics nowhere shows that these press releases were republished in the media, or that the media took notice of them. Adalytics' citation to *Nat'l Life Ins. Co. v. Phillips Publ'g, Inc.*, 793 F. Supp. 627 (D. Md. 1992) is inapposite—that case relied on record evidence, and was decided at the summary judgment stage. *See id.* at 635.

The remaining factors further weigh against the limited-purpose public figure theory. The second, third, and fourth factors turn on to the extent to which DoubleVerify participated in a

"public controversy." *Foretich*, 37 F.3d at 1553. But cases have clarified that the "public controversy" must be one ***pre-dating the defamation***. *See Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 688 (4th Cir. 1989) (inquiry turns on "the existence of a pre-defamation public controversy"). Adalytics, seeking to manufacture the controversy necessary to support its limited-public-figure argument, argues that its article "cites letters from members of Congress going as far back as 2016, urging the Federal Trade Commission and Justice Department to investigate digital advertising fraud." Mot. 14. But even if Adalytics' article were subject to judicial notice for purposes of this motion to dismiss, the truth of purported facts about controversies "as far back as 2016" would not be. *See Kale v. Alfonso-Royals*, 139 F.4th 329, 336 n.4 (4th Cir. 2025) (taking notice of "existence of" document, but not "disputed" facts within that document).

The only "public controversy" alleged in the Complaint is the controversy Adalytics started by defaming DoubleVerify. Compl. ¶¶ 9–13. That is insufficient to find that DoubleVerify is a limited-purpose public figure. Even if DoubleVerify responded to Adalytics' defamation to attempt to mitigate the damage, that is irrelevant because "[i]t is established that those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Jenoff v. Hearst Corp.*, 644 F.2d 1004, 1007 (4th Cir. 1981) (quotations omitted); *see also Calvin Klein Trademark Trust v. Wachner*, 129 F. Supp. 2d 248, 252 (S.D.N.Y. 2001) ("[p]rior to" the defamatory statements, "there was no 'public controversy,'" and "[a]n individual does not forfeit the protections against defamation … simply because he or she is forced to respond publicly").

The fifth factor also weighs against holding that DoubleVerify is a limited-purpose public figure, where there are no alleged facts showing that DoubleVerify was a limited-purpose public figure at any point, much less that DoubleVerify "retained [that] status at the time of the alleged

defamation." Mot. 14. Adalytics does not carry its burden of showing that DoubleVerify is a limited purpose public figure, and so the Court need not consider actual malice.

### 2. DoubleVerify Sufficiently Alleges Facts Giving Rise to a Reasonable Inference of Actual Malice.

DoubleVerify alleges facts supporting an inference of actual malice in any event. Adalytics acknowledges that this standard does not require "malice" in the colloquial sense; rather, the standard simply requires allegations that the speaker made a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Steele v. Goodman*, 382 F. Supp. 3d 403, 422 (E.D. Va. 2019) (denying dismissal); *see also Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283–84 (11th Cir. 2024) (a pleader "need only allege sufficient facts to permit the inference that [the defendant] published [the] statements with actual malice" meaning that the complaint should contain "facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not."). Courts should refrain from prematurely deciding this issue at the pleading stage— as even Adalytics' authorities again admit. Actual malice turns on "subjective evaluations," and "the Fourth Circuit has cautioned against a Court taking those determinations away from a jury." *Nat'l Life Ins. Co.*, 793 F. Supp. at 632; *see also Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 420–21 (S.D.N.Y. 2022) ("A court does not weigh competing, plausible theories of actual malice on a motion to dismiss.").

"At the motion to dismiss stage, [a]n averment of knowledge that the statement was false is a sufficient allegation of actual malice." *Solomon Found*, 2023 WL 3058321, at *7 (denying dismissal). DoubleVerify makes such averments here. *See, e.g.*, Compl. ¶¶ 92-94 ("Adalytics knew, or should have known, that the statements were false," and "acted with actual malice"). DoubleVerify supports that allegation with facts that Judge Chasanow credited when rejecting

Adalytics' same arguments at the dismissal stage in the *Colossus* litigation.    There, Judge Chasanow reasoned that "because Plaintiff alleged that [Adalytics] 'knew that its statements were false and/or misleading based on its expertise in advertising technology and programmatic advertising' and because Plaintiff repeatedly informed Defendant that the post was false before Defendant published the post," the plaintiff alleged Adalytics' "actual knowledge."   *Colossus*, 2025 WL 712986, at *10.    DoubleVerify makes the same allegations in this case.    Just as in *Colossus*, because Adalytics has "expertise in advertising technology and programmatic advertising," and because DoubleVerify gave notice to Adalytics that its article would be false and misleading, Compl. ¶ 93, DoubleVerify's allegations give rise to an inference that Adalytics acted knowingly, or recklessly at bare minimum.

Adalytics' arguments otherwise misstate the law.    Adalytics cites pages of inapposite cases, asserting that various factors each are individually insufficient to support actual malice.    Mot. 15–18.    This divide-and-conquer argument is misleading.    "[B]ecause actual malice is a subjective inquiry, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence."   *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471, 481 (E.D. Va. 2018) (denying dismissal) (quotations omitted).    Courts consider whether any of a wide range of alleged facts support inferring knowledge or recklessness under the circumstances.    And critically, the question is not whether any individual fact, alone, shows malice.    The question is whether the allegations, "***taken together***," support that inference.   *Gilmore*, 370 F. Supp. 3d at 673 (emphasis added); *Coomer v. Byrne*, 2025 WL 90097, at *6 (M.D. Fla. Jan. 14, 2025) (denying dismissal).

Numerous courts weigh allegations like the following as contributing actual malice:

***Expertise***: DoubleVerify alleges that Adalytics was likely to know that its article was false particularly given Adalytics' "expertise in the online advertising market."   Compl. ¶ 78.    Adalytics

claims expertise "alone" shows no malice. Mot. 18. But that Adalytics had the "expertise in advertising technology" necessary to know why its statements were false adds to an inference that Adalytics acted knowingly or recklessly. *Colossus*, 2025 WL 712986, at *10.

*Preconceived narrative*: DoubleVerify alleges that Adalytics "spins its 'analysis' of an anecdotal number of impressions into a narrative targeting advertising industry participants" via a preconceived "playbook." Compl. ¶ 6. District courts in this Circuit credit "preconceived narrative" allegations as contributing to actual malice. *Apelbaum v. Bloom*, 2025 WL 1869578, at *4 (E.D. Va. July 7, 2025) (denying dismissal); *Gilmore*, 370 F. Supp. 3d at 673; *see also Butowsky v. Folkenflik*, 2019 WL 3712026, at *10 (E.D. Tex. Aug. 7, 2019) (similar).

*Motive and Bias*: DoubleVerify alleges that Adalytics "has the motive to disparage the efficacy of DoubleVerify's pre-bid solutions" because Adalytics "does not offer pre-bid services" and seeks to "promote its own platform to advertisers." Compl. ¶ 6, 33. Adalytics claims motive is irrelevant, relying on cases against news organizations. Mot. 16. But Adalytics' own citations hold that "it "cannot be said that evidence concerning motive … never bears any relation to the actual malice inquiry." *Harte-Hanks Comm'cs, Inc. v. Cunnaughton*, 491 U.S. 657, 668 (1989). And the news-organization cases Analytics cites are distinguishable. News organizations have a "profit motive" in every article published (publishing is their business), and so that purported motive says little about whether any specific article intended to defame. Cases outside of the news context, however, hold that motive *is* probative of actual malice, particularly where that motive is *tied to the content* of the article and is more than a motive to publish in general. *See*, *e.g.*, *Palin v. New York Times Co.*, 940 F.3d 804, 814–15 (2d Cir. 2019) (reversing dismissal given personal motive); *Gilmore*, 370 F. Supp. 3d at 673; *Spirito*, 350 F. Supp. 3d 471, 482 (denying dismissal).[5]

---

[5] *Tucker v. Fischbein*, 237 F.3d 275 (3d Cir. 2001), on which Adalytics relies (Mot. 18) is

**DoubleVerify's Press Release**: DoubleVerify alleges that Adalytics knew its article was defamatory before publication because DoubleVerify told Adalytics so in DoubleVerify's press release. Compl. ¶¶ 7, 85. Despite Adalytics' article not being shared with DoubleVerify before its publication, Adalytics claims that DoubleVerify did not pre-but "any specific statement." Mot. 17. But DoubleVerify's press release stated that many bots are captured at the post-serve stage, and Adalytics' omission of that fact is one reason its article is misleading. *See* Background, *supra*. Judge Chasanow credited similar allegations in *Colossus*. *See* 2025 WL 712986, at *10. That is common sense: a party is more likely to act recklessly or with knowledge when they forge ahead with falsehoods despite a warning that their statements are false. DoubleVerify's allegations, taken together, are more than enough to infer that Adalytics acted knowingly or recklessly.

### E.    Adalytics' "Of and Concerning" Argument Is Without Merit

Adalytics briefly asserts that certain falsehoods in its article were not "of and concerning" DoubleVerify. Mot. 19. Adalytics asserts that this is because DoubleVerify was not, for all statements, "singled out," rather than referred to as a part of a "group." *Id.* But "[w]hile the general rule is that defamation of a group does not allow an individual member of that group to maintain an action, this rule is not applicable to a small group." *Murdaugh v. Blackfin, Inc.*, 2025 WL 561317, at *4 (D.S.C. Feb. 19, 2025). "[W]here a statement defames all members of a small group, the reference to the individual plaintiff reasonably follows from the statement." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 108 (2d Cir. 2017) (quotations omitted) (reversing dismissal). Here, DoubleVerify was one of only a few businesses mentioned in the article, and was named in its introduction and in specific references throughout the article. DoubleVerify's allegations raise

---

inapposite—that case relied largely on sloppy journalistic practices (one factor in actual malice), and did not feature the additional facts of Adalytics' intense motive, Adalytics' actual knowledge on account of DoubleVerify's prebuttal, and Adalytics' expertise at issue here.

reasonable inferences that a reader would take Adalytics' statements to refer to DoubleVerify here.

## II.    DOUBLEVERIFY ALLEGES FACTS SUFFICIENT TO SUPPORT ITS LANHAM ACT CLAIM.

DoubleVerify also sufficiently alleges its Lanham Act claim (Count I).  Adalytics repeats arguments rejected in *Colossus* and provides no good ground for departing from that decision.

### A.    DoubleVerify Sufficiently Alleges That the Article Was a "Commercial Advertisement."

The Court should follow Judge Chasanow's reasoning that Adalytics' articles are "commercial advertisement[s]" sufficient for liability under the Lanham Act.  *See Colossus*, 2025 WL 712986, at *7–8.  To determine whether a statement is a "commercial advertisement," courts should weigh several factors, one of which is whether the statement is "commercial speech."  *See id* at *7.  To determine whether a statement is "commercial speech," courts in turn consider whether "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech."  *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 285 (4th Cir. 2013); *Colossus*, 2025 WL 712986, at *7 (similar).  Adalytics admits these same factors, Mot. 21, but omits that "it is not necessary that each of the characteristics be present in order for speech to be commercial."  *Mayor & City of Baltimore*, 721 F.3d at 285 (quotations omitted).  Particularly where this multi-factor test results in fact-intensive inquiries, courts should refrain from too quickly determining that speech is not commercial "in the absence of a fully developed record."  *Id.* at 286-287 (vacating summary judgment, and criticizing "hasty decision" otherwise).

DoubleVerify alleges more than enough to show that Adalytics' article is "commercial speech" here.  DoubleVerify alleges that the article was published on the same website whose "homepage … advertises Adalytics' services and invites users to provide contact information to learn more about those services," Compl. ¶ 72, that the website serves "marketing purposes," *id.*

¶ 6, that publishing hit-piece articles is part Adalytics' strategy to "grow its own business" and further its "business interest," *id.* ¶¶ 43, 45, and that Adalytics coordinated press coverage. *Id.* ¶¶ 12, 65. Just like in *Colossus*, Adalytics' article was "economically motivated," as its "posts are generated to advertise its services" and published in order to attack competitors and "win[] new advertiser customers." *Colossus*, 2025 WL 712986, at *8; Compl. ¶¶ 33, 68, 72–77.

Adalytics complains that Judge Chasanow did not consider its article's text, and derides her reasoning as "erroneous" and not to "be relied upon as persuasive." Mot. 24. But Judge Chasanow committed no error. Her decision is consistent with others recognizing that articles posted on websites aimed at driving commercial traffic are commercial speech. *See Mimedx Grp.*, 2017 WL 3129799, at *8 (statements in "Press Release" and brochure were commercial speech); *Gen. Steel Domestic Sales v. Chumley*, 129 F. Supp. 3d 1158, 1185 (D. Colo. 2015) (denying dismissal where website "intended to discourage" customers from competitor and so "at least implicitly" aimed at "encouraging them to purchase from a different seller"); *Precision IBC, Inc. v. PCM Cap., LLC*, 2011 WL 5444114, at *13 (S.D. Ala. Oct. 17, 2011) (collecting cases).

Adalytics also attempts to distinguish *Colossus* on the theory that "the phrase 'attract new clientele' does not appear anywhere on the Wayback Machine URL cited in the Complaint" in this case. Mot. 24 (citing Compl. ¶ 6 n.1). This is a distraction. The Complaint cited a Wayback Machine URL referencing Adalytics' website as it existed in February 2025, Compl. ¶ 6 n.1, after Adalytics apparently scrubbed its website. However, the language appeared on Adalytics' website as recently as August 2024. *See* Anguas Decl., Ex. B ("Like many other companies, we release thought leadership on systemic issues affecting brands and their media investments as part of our commitment to proactively protect our advertiser clients and attract new clientele."). Adalytics removed the "attract new clientele" statement—an express admission by Adalytics that its website

is commercial—between August 2024 and February 2025, while the *Colossus* motion to dismiss briefing was ongoing.  Regardless, DoubleVerify adequately alleges that Adalytics uses its website for commercial marketing purposes, Compl. ¶¶ 6, 72, and so Adalytics' citation quibbles are no good ground to distinguish *Colossus*.

Adalytics' own citations underscore why dismissal should be denied.  Adalytics again relies on decisions discussing academic settings or "peer-reviewed" journals, Mot. 21–22, which are inapposite for the reasons discussed in Part I.C, *supra*.  Adalytics also cites cases about "newspapers, and magazines," Mot. 23, ignoring again that a motive to publish articles generally differs from a motive to publish articles attacking a competitor specifically, *see supra* at 23.  *Nat'l Life*, 793 F. Supp. 627, on which Adalytics heavily relies (Mot. 23), is another such case.  *Nat'l Life* was decided at the summary judgment stage—not dismissal—and still found a "much closer question" as to whether the speech was commercial.  *See* 793 F. Supp. at 643.  And *Nat'l Life* relied on the distinguishable fact that there, the defendant's only commercial interest was in selling magazines or publishing generally.  *See id.* at 644 ("Defendants' economic motivation for sending the promotional materials [for the magazine] to the potential subscribers [wa]s not enough to turn the statements into commercial speech.").  The defendant was not selling the same products (insurance products) as, or competing with, the plaintiff.

The opposite is true here.  Rather than an interest in publishing generally (like a magazine), Adalytics instead directly competes with DoubleVerify and has commercial interests in defaming DoubleVerify specifically in order to sell its competing products for "Adalytics' financial benefit." Compl. ¶¶ 6, 43–45, 68, 72.  The question that was "close" in *Nat'l Life* is not here: Adalytics' article was commercial speech, or at minimum, is sufficiently alleged to be so at this stage.

The Court should follow *Colossus* and deny Adalytics' motion to dismiss.

**B.      DoubleVerify Alleges the Remaining Elements of a Lanham Act Claim.**

Adalytics' remaining attempts to avoid DoubleVerify's well-pled Lanham Act claim are equally meritless.  Mot. 25–27.  Adalytics argues that DoubleVerify does not plead a false statement.  Mot. 25–26.  That is wrong—DoubleVerify pleads numerous express and implied false statements of fact for the reasons discussed above.  *See* Part I, *supra*; *see also Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 193 F. Supp. 3d 556, 571 (E.D. Va. 2016) (false statements for the Lanham Act may be express or implied).

DoubleVerify also alleges Lanham Act injuries.  Adalytics' arguments on this point are specious—Adalytics admits that it is enough for a plaintiff to allege "an injury to commercial interest in sales or ***business reputation***."  Mot. 26 (emphasis added).  Adalytics complains that DoubleVerify does not allege a specific lost customer, *id.*, but ignores that DoubleVerify does allege harms to "business reputation" and "goodwill."  Compl. ¶¶ 80, 86.  DoubleVerify also alleges "significant reputational harm," and loss of resources needed to respond to Adalytics' false and misleading attacks, including "expenditure of significant employee time and resources to respond to inquiries from existing and potential customers."  *Id.* ¶ 69.  Adalytics also "worked to amplify its false and misleading statements" in the media, including in *The Wall Street Journal*. *Id.* ¶¶ 65–67.  Adalytics cannot argue that DoubleVerify lacks reputational injuries, where it caused those exact injuries in national publications.  *Id.*; *Bennett v. Zydron*, 2017 WL 9478505, at *4 (E.D. Va. Aug. 17, 2017) (denying dismissal given injury to "professional reputation"); *AvePoint, Inc.*, 981 F. Supp. 2d at 521 (same given plausible damage to "business, reputation, and goodwill").[6]

---

[6] Adalytics' citation to *Davis v. Avvo* is inapposite.  345 F. Supp. 3d 534 (S.D.N.Y. 2018).  That case discussed statements that were non-actionable puffery, and granted dismissal only where the plaintiff did not allege the "reputational harm" at issue here.  *Id.* at 544.  *Church Ekklasia Sozo Inc. v. CVS Health Corp.*, 2022 WL 1572732 (W.D.N.C. Feb. 25, 2022) also is off-base.  That case featured a consumer plaintiff, not a business actually protected by the Lanham Act.  *Id.*

III.    **DOUBLEVERIFY AMPLY ALLEGES ITS STATE-LAW CLAIMS.**

DoubleVerify also sufficiently alleges facts to plead its common-law injurious falsehood (Count 3), tortious interference with business relations (Count 4), and unfair competition (Count 5) claims.  Adalytics argues that all three claims fail because DoubleVerify is a public figure.  Mot. 27.  That argument fails for all the same reasons discussed in Part I.D, *supra*.

A.    **DoubleVerify States An Injurious Falsehood Claim.**

Adalytics argues that DoubleVerify's injurious falsehood claim fails because DoubleVerify purportedly does not plead "actual malice" or "special damages."  Mot. 27–28.  DoubleVerify does plead actual malice, for the reasons discussed in Part I.D, *supra*.

Adalytics' "special damages" argument errs.  Adalytics argues that DoubleVerify does not "identify a single customer who allegedly declined to do business with DoubleVerify because of the Report or any actual, pecuniary losses suffered."  Mot. 28.  But special damages simply mean "those which result in a pecuniary loss directly or immediately from the conduct of third persons," including "impairment of vendibility or value [caused] by the disparagement," as well as "the expense of measures reasonably necessary to counteract the publication."  *Rite Aid Corp. v. Lake Shore Investors*, 471 A.2d 735, 742 (Md. Ct. App. 1984); *see also Rounds v. Maryland-Nat. Capital Park & Planning Comm'n*, 109 A.3d 639, 663–64 (Md. Ct. App. 2015) (allegation that "false surveys ha[ve] affected the marketability of their title" alleged special damages).  Here, DoubleVerify ***does*** allege that it has suffered "pecuniary damages," including "in the form of expenses incurred for DoubleVerify's measures reasonably necessary to counteract the Article's harm to DoubleVerify's business."  Compl. ¶ 95; *see also id.* ¶¶ 69, 79 (discussing lost resources).  Such allegations are enough to show harm flowing directly from Adalytics' falsehoods here.

B.    **DoubleVerify States An Unfair Competition Claim.**

Adalytics argues that DoubleVerify's common-law unfair competition claim should be

dismissed because Adalytics' statements "were not actionable" and "the Report is protected by the First Amendment." Mot. 29. These arguments are wrong for the reasons discussed in Parts I.A, I.B, and I.C, *supra*. Adalytics admits that the unfair competition tort broadly forbids "deceit, trickery, or unfair methods of any sort," underscoring that this claim survives dismissal. Mot. 29.

### C.    DoubleVerify Adequately Alleges Tortious Interference With Business Relations.

Adalytics argues that DoubleVerify's tortious interference with business relations claim fails because DoubleVerify fails to allege a "wrongful act." Mot. 29. That is wrong. *See* Part I.

Adalytics' additional argument that "DoubleVerify also fails to identify any specific customer relationship that was both targeted and destroyed by Adalytics" also errs. Mot. 30. Adalytics' citation to *Interphase Garment Sols., LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460 (D. Md. 2008) is inapposite; that case discusses the tort of "interference with **contractual** relations," not interference with business relations. *Id.* at 465 (emphasis added). But there are "two general types" of interference torts in Maryland, *Bechtel v. St. Joseph Med. Ctr., Inc.*, 2012 WL 1476079, at *10 (D. Md. April 26, 2012), and the required damages element for the business relations tort is simply "actual damage and loss resulting." *Id.* Here, DoubleVerify amply alleges that DoubleVerify's customer relationships were harmed by Adalytics' intentional interference, and that DoubleVerify needed to expend resources reassuring its customers in the wake of Adalytics' misleading article. Compl. ¶¶ 69, 79, 107–109. Such allegations show actual damage.

## CONCLUSION

For the foregoing reasons, the Court should deny Adalytics' motion to dismiss. In the alternative, DoubleVerify respectfully requests leave to amend.

Dated: October 6, 2025
Washington, District of Columbia

Respectfully submitted,

By: */s/ Kwame J. Manley*
Kwame J. Manley (16185)
Bradley J. Bondi (16071)
Ronald K. Anguas Jr. (*pro hac vice*)
**PAUL HASTINGS LLP**
2050 M St. NW
Washington, DC 20036
Phone: (202) 551-1700
Facsimile: (202) 551-0201
kwamemanley@paulhastings.com
bradbondi@paulhastings.com
ronaldanguas@paulhastings.com

D. Scott Carlton (*pro hac vice*)
**PAUL HASTINGS LLP**
515 S. Flower St.
Los Angeles, CA 90071
Phone: (213) 683-6000
Facsimile: (213) 627-0705
scottcarlton@paulhastings.com

***Attorneys for Plaintiffs DoubleVerify
Holdings Inc. and DoubleVerify***

**CERTIFICATE OF SERVICE**

I certify that on this 6th day of October, 2025, I caused a copy of the foregoing to be electronically served via the Court's CM/ECF system on all parties and counsel receiving electronic notices in this case.


By: */s/ Kwame J. Manley*
Kwame J. Manley