## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DOUBLEVERIFY HOLDINGS INC. and
DOUBLEVERIFY INC.,

        Plaintiffs,

   v.

ADALYTICS RESEARCH, LLC,

        Defendant.

No. 8:25-cv-01535-TDC

### DEFENDANT ADALYTICS RESEARCH, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)

Alison B. Schary (#18687)
Chelsea T. Kelly (#31561)
Marietta Catsambas (#31794)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW
Suite 500 East
Washington, D.C. 20005
(202) 973-4248
alisonschary@dwt.com
chelseakelly@dwt.com
mariettacatsambas@dwt.com


*Attorneys for Defendant
Adalytics Research, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

I.       DOUBLEVERIFY FAILS TO STATE A CLAIM FOR DEFAMATION ............ 2

         A.       The Court Must Consider the Full Report .................................................. 2

         B.       DoubleVerify Does Not Challenge Any "Express Statements"
                  from the Report ......................................................................................... 3

         C.       DoubleVerify's Defamation by Implication Claim Fails as a Matter
                  of Law ....................................................................................................... 4

         D.       Adalytics' Analysis Is Protected Opinion Based on Disclosed,
                  Undisputed Facts ....................................................................................... 6

         E.       DoubleVerify Cannot Plausibly Plead Adalytics Acted with Actual
                  Malice ....................................................................................................... 7

II.      DOUBLEVERIFY FAILS TO STATE A LANHAM ACT CLAIM ................... 12

         A.       The Report Is Not a "Commercial Advertisement" .................................. 12

         B.       Plaintiffs Fail to Allege the Other Elements of a False-Advertising
                  Claim ....................................................................................................... 14

III.     DOUBLEVERIFY'S REMAINING TORT CLAIMS FAIL AS A
         MATTER OF LAW ............................................................................................ 14

CONCLUSION ......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Oral Techs., L.L.C. v. Nutrex Rsch., Inc.*,
2011 WL 1080204 (D.N.J. Mar. 21, 2011)..............................................................................15

*Agora, Inc. v. Axxess, Inc.*,
90 F. Supp. 2d 697 (D. Md. 2000), *aff'd*, 11 F. App'x 99 (4th Cir. 2001) ...............................7

*Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*,
332 F. App'x 787 (3d Cir. 2009) ...........................................................................................15

*AvePoint, Inc. v. Power Tools, Inc.*,
981 F. Supp. 2d 496 (W.D. Va. 2013) ....................................................................................14

*Bennett v. Zydron*,
2017 WL 9478505 (E.D. Va. Aug. 17, 2017).........................................................................14

*Biro v. Condé Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 867 F.3d 541 (2d Cir. 2015) ............................12

*Bobulinski v. Tarlov*,
758 F. Supp. 3d 166 (S.D.N.Y. 2024)......................................................................................7

*Carroll Mgmt. Co. v. Dun & Bradstreet, Inc.*,
2025 WL 415743 (4th Cir. Feb. 6, 2025) .................................................................................6

*Chapin v. Greve*,
787 F. Supp. 557 n.21 (E.D. Va. 1992), *aff'd sub nom. Chapin v. Knight-Ridder, Inc.*, 993
F.2d 1087 (4th Cir. 1993) ........................................................................................................5

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993) ............................................................................................5, 8

*Colossus Media, LLC v. Adalytics Rsch., LLC*,
No. CV DKC 24-1402, 2025 WL 712986 (D. Md. Mar. 5, 2025) ..........................................11

*Compuware Corp. v. Moody's Invs. Servs., Inc.*,
499 F.3d 520 (6th Cir. 2007) .................................................................................................12

*Contemp. Mission, Inc. v. N.Y. Times Co.*,
665 F. Supp. 248 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 612 (2d Cir. 1988)...................................9

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
406 F. Supp. 3d 1258 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021) ........................8

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*,
    981 F. Supp. 112 (E.D.N.Y. 1997) .......................................................................................12

*Deripaska v. Associated Press*,
    282 F. Supp. 3d 133 (D.D.C. 2017)................................................................................11, 12

*Dfinity Found. v. N.Y. Times Co.*,
    702 F. Supp. 3d 167 (S.D.N.Y. 2023), *aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024) ........3

*Edwards v. Am. Med. Ass'n, Inc.*,
    2025 WL 444424 (4th Cir. Feb. 10, 2025) .............................................................................10

*Edwards v. Schwartz*,
    378 F. Supp. 3d 468 (W.D. Va. 2019) .....................................................................................4

*Fairfax v. CBS Corp.*,
    2 F.4th 286 (4th Cir. 2021) ............................................................................................10, 11

*Fitzgerald v. Penthouse Int'l, Ltd.*,
    691 F.2d 666 (4th Cir. 1982) ...................................................................................................9

*Gen. Steel Domestic Sales, LLC v. Chumley*,
    129 F. Supp. 3d 1158 (D. Colo. 2015).....................................................................................13

*Harkonen v. Fleming*,
    880 F. Supp. 2d 1071 (N.D. Cal. 2012) ..................................................................................10

*Harvey v. Cable News Network, Inc.*,
    520 F. Supp. 3d 693 (D. Md. 2021).....................................................................................8, 10

*Hatfill v. N.Y. Times Co.*,
    532 F.3d 312, 322-23 (4th Cir. 2008) .....................................................................................9

*Johnson v. Columbia Broad. Sys., Inc.*,
    10 F. Supp. 2d 1071 (D. Minn. 1998)......................................................................................5

*Lokhova v. Halper*,
    995 F.3d 134 (4th Cir. 2021) ...................................................................................................6

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .................................................................................................11

*Mejia v. Telemundo Mid-Atl. LLC*,
    440 F. Supp. 3d 495 (D. Md. 2020)..........................................................................................2

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ...............................................................................................11

*Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*,
   No. 16 CIV. 3645 (KPF), 2017 WL 3129799 (S.D.N.Y. July 21, 2017) ................................13

*Nat'l Life Ins. Co. v. Phillips Publ'g, Inc.*,
   793 F. Supp. 627 (D. Md. 1992) ........................................................................................9, 13

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
   720 F.3d 490 (2d Cir. 2013) ....................................................................................................7

*Pace v. McGrath*,
   378 F. Supp. 140 (D. Md. 1974) ..............................................................................................5

*Precision IBC, Inc. v. PCM Cap., LLC*,
   No. CIV.A. 10-00682-CG-B, 2011 WL 5444114 (S.D. Ala. Oct. 17, 2011), *adopting R. & R.*,
   2011 WL 5444111 (S.D. Ala. Nov. 10, 2011) .......................................................................13

*Solomon Found. v. Christian Fin. Res., Inc.*,
   2023 WL 3058321 (D. Md. Apr. 24, 2023) (Opp. 11-12) ..................................................5, 11

*Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) ...................................................................................................7

*Stepnes v. Ritschel*,
   663 F.3d 952 (8th Cir. 2011) .................................................................................................10

*Synygy, Inc. v. ZS Assocs., Inc.*,
   110 F. Supp. 3d 602 (E.D. Pa. 2015) .....................................................................................14

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) ...............................................................................................11

*Techtronic Indus. Co. v. Bonilla*,
   2025 WL 2687164 (M.D. Fla. Sept. 19, 2025) ........................................................................6

*Underwager v. Salter*,
   22 F.3d 730 (7th Cir. 1994) .....................................................................................................6

**State Cases**

*Command Tech., Inc. v. Lockheed Martin Corp.*,
   2015 WL 6470277 (Md. Ct. Spec. App. Oct. 27, 2015) .........................................................15

*Elliott v. Bd. of Tr. of Montgomery Cnty. Cmty. Coll.*,
   104 Md. App. 93 (1995) ...........................................................................................................6

*K & K Mgmt., Inc. v. Lee*,
   316 Md. 137 (1989) ...............................................................................................................15

*Krawatsky v. Avrunin*,
2025 WL 1540394 (Md. App. Ct. May 30, 2025) ...................................................................10

*Piscatelli v. Van Smith*,
424 Md. 294 (2012) ...............................................................................................................2

**INTRODUCTION**

As Adalytics explained in its opening brief (ECF No. 26-1, "Mot."), DoubleVerify's claims all fail as a matter of law because it does not dispute the core factual finding of the challenged Report: that advertisers using services offered by major ad tech vendors (including DoubleVerify) had their ads served on bots. Instead, it complains the Report should have highlighted DoubleVerify's separate ***post-bid*** offerings, and claims that by not doing so, the Report implied DoubleVerify's services are "ineffective" and its customers are charged for inauthentic impressions. Compl. ¶¶ 1-2; Opposition (ECF No. 27, "Opp.") 7.

Plaintiffs' theory of defamation by implication arising from undisputed facts fails for multiple independent reasons: (1) the Report does not reasonably support the alleged implications, much less demonstrate that Adalytics "intended" or "endorsed" them—to the contrary, it expressly *rejects* them (Mot. 1-2); (2) courts decline to referee disputes like this one over the interpretation of scientific or technical data, treating them as matters of protected opinion (*id.* 11-13); and (3) DoubleVerify is a public figure who fails to plead that Adalytics acted with actual malice— nor could it, since it concedes it cannot prove that the alleged implications are false (*id.* 13-18).

DoubleVerify's Opposition does not grapple with the fundamental flaws in its case and does not materially dispute the case law cited by Adalytics. Instead, it tries to conjure alternative facts: After touting its credentials as an "industry leader" in the world of advertising fraud prevention, DoubleVerify now tries to insist it is a mere private figure. But Plaintiffs cannot rewrite their pleading by opposition brief, nor can they ignore facts subject to judicial notice.

Perhaps most astonishing, DoubleVerify tells this Court to ***ignore*** the content of the Report itself (which was printed from the URL cited in the Complaint[1]), and instead limit itself to

---

[1] Schary Decl. (ECF No. 26-2) ¶ 2, Ex. A.

1

DoubleVerify's out-of-context quotes and self-serving characterizations. Opp. 12-13 n.3. It is clear why DoubleVerify does not want the Court to review the Report: Read as a whole, it does not support DoubleVerify's alleged implications. The Report is also clearly not a "commercial advertisement" under the Lanham Act, but rather an analytical report on a matter of significant public interest, as demonstrated by the fact that Sen. Mark Warner cited the Report in letters to the FTC and Justice Department, and major media outlets covered its findings. But this Court not only can, but must consider the entire Report to assess Plaintiffs' claims on a motion to dismiss. *See* Mot. 10. When assessed in that proper context, it is clear Plaintiffs fail to state any viable claim. The Complaint should be dismissed with prejudice.

## ARGUMENT

## I.  DOUBLEVERIFY FAILS TO STATE A CLAIM FOR DEFAMATION

### A.  The Court Must Consider the Full Report

This Court should—indeed, must—consider the entire Report in adjudicating this motion. Under Maryland law, to "determine whether a publication is defamatory, [which is] a question of law for the court, the publication must be read as a whole," since "[w]ords have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed." *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012); *see also Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495, 499 (D. Md. 2020) (same).

In a footnote, DoubleVerify urges this Court to ignore the contents of the Report as "beyond the pleadings," even though it is the basis for its claims and cited in the Complaint. Opp. 12-13 n.3. DoubleVerify does not dispute that the Report is integral to its Complaint, but claims "there were draft versions of [the Report] … and it is unclear which version Adalytics attached." *Id*. But DoubleVerify does not assert any claims based on purported "draft versions" of the Report; ***all of its claims are based on the final Report published on March 28, 2025***. Opp. 7. And DoubleVerify

2

does not dispute that Exhibit A to the Motion is an accurate copy of the published Report, nor does it identify any differences between Exhibit A and the document it presumably relied on to draft its Complaint. The Court should decline Plaintiffs' request to ignore the Report it is suing over, and should consider the Report as a whole on this motion.

### B. DoubleVerify Does Not Challenge Any "Express Statements" from the Report

DoubleVerify insists it is not only asserting defamation by implication, but also challenging express statements from the Report. Opp. 9-10. Yet ***none of the statements presented as "quotes" from the Report are actual sentences found in it.*** Instead, DoubleVerify is "quoting" its own Complaint, where it cobbled together short phrases from different sections of the Report for its own characterizations of the content.

For example, in the first bullet point (*id.* 9), only the phrases in single quotation marks come from the Report. The Report actually describes a list of websites as "the list of publishers who **appear to** utilize DoubleVerify's publisher optimization tools and **appear to** have been serving ads on behalf of Fortune 500, United States Government, or other advertisers to bots." ECF No. 26-3 ("Report") at 110 (emphasis added). Plaintiffs deliberately removed the phrase "appear to" from their purported "quote" of the Report. But that language is important: It makes clear this is Adalytics' ***deduction*** from observing ads served on bots whose source code referenced "charge-allDoubleVerifyBotAvoidance," as documented in the Report. *See Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 176 (S.D.N.Y. 2023) (dismissing defamation claim over "inferences from disclosed facts" where defendant "caveated its conclusion with cautionary language that would signal to a reasonable reader that [defendant] was expressing opinion, not fact"), *aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024). This statement is also true: DoubleVerify concedes that advertisers using its tools have had their ads served on bots. Mot. 3-4; Compl. ¶¶ 31-32, 53.

3

The second bullet point is also a misleading partial quote.  *See* Mot. 19. The full sentence reads: "During the course of several analyses on behalf of Fortune 500 advertisers**,** impression level log file data and financial invoices ***suggested that*** advertisers were billed by ad tech vendors for ad impressions served to declared bots operating out of known data center server farms." Report at 1 (emphasis added).  Once again, DoubleVerify excised the "cautionary language" ("suggested that") framing this as Adalytics' hypothesis based on observed data.[2] *See Edwards v. Schwartz*, 378 F. Supp. 3d 468, 532 (W.D. Va. 2019) (statements caveated with "to our knowledge" and "as far as we know" were not actionable fact).  And because DoubleVerify cannot confirm that no customer was charged for ads documented in the Report, the alleged implication is not provably false.  Mot. 10; Compl. ¶ 53 n.19.

Regarding the third bullet point, DoubleVerify does not dispute that its customers had ads "served to the URLScan bot"; and whether URLScan is a non-"declared bot" is not "of and concerning" DoubleVerify.[3]  And the fourth and fifth bullet points once again quote allegations from the Complaint—not statements from the Report.

### C.  DoubleVerify's Defamation by Implication Claim Fails as a Matter of Law

DoubleVerify's Opposition describes two challenged implications: (1)  "[its] customers were affected by rampant ad fraud" (*i.e.*, its "services are ineffective") and (2) "[its] customers are regularly billed for [bot] impressions."  Opp. 7, 11.  As a threshold matter, "it is for this Court

---

[2] Plaintiffs acknowledge their selective quotation in a footnote but request the Court ignore the actual sentence in the Report in favor of their cherry-picked phrase.  Plaintiffs' misleading quotations only underscore why the Court must consider the Report as a whole.

[3] The Report clearly states URLScan may not declare itself as a bot and ads served to it may qualify as SIVT.  Report at 63.  Plaintiffs concede some SIVT are not caught pre-bid.  Compl. ¶ 32.

(under Maryland law) to determine whether the [publication] is capable of bearing the innuendo or particular meaning that plaintiffs ascribe to it." *Pace v. McGrath*, 378 F. Supp. 140, 143 (D. Md. 1974). And where, as here, the underlying statements are undisputed, Plaintiffs must satisfy the standard described in *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993). Mot. 10.

DoubleVerify's attempts to avoid *Chapin* fall flat. Opp. 11-12. First, while DoubleVerify is at least a limited public figure (*infra* § I.E.1), *Chapin* applies irrespective of public-figure status. In *Chapin*, the district court noted it "does not decide, nor need it decide" the plaintiff's public-figure status to resolve the motion to dismiss. *Chapin v. Greve*, 787 F. Supp. 557, 563, & 568 n.21 (E.D. Va. 1992), *aff'd sub nom. Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993);[4] *see also Johnson v. Columbia Broad. Sys., Inc.*, 10 F. Supp. 2d 1071, 1075 (D. Minn. 1998) (intent requirement for implied defamation "equally applicable" to private figures). Second, *Chapin* applies because the alleged implication is "literally true," 993 F.2d at 1093: The Complaint concedes that DoubleVerify's "pre-bid" clients have had ads served on bots. Compl. ¶¶ 31-32, 53.

DoubleVerify does not identify any basis **in the Report** to "affirmatively suggest" Adalytics "intends or endorses" the challenged implications. Instead, it once again quotes its own Complaint (not the Report) about Adalytics' alleged "business interest[s]" and "expertise." Opp. 12. This does not satisfy *Chapin*. 993 F.2d at 1092 ("A defamatory implication must be present in the plain and natural meaning of the words used.").

Lacking any basis for its implication in the Report, DoubleVerify urges this Court to ignore it entirely—particularly, its concluding "caveats and limitations" section. Mot. 7-8. DoubleVerify offers no support for its novel theory that courts may disregard the conclusion of a challenged

---

[4] *Solomon Found. v. Christian Fin. Res., Inc.*, 2023 WL 3058321 (D. Md. Apr. 24, 2023) (Opp. 11-12) is inapposite—it does not involve defamation by implication or address *Chapin*.

publication when assessing an implication claim. *See Techtronic Indus. Co. v. Bonilla*, 2025 WL 2687164, at \*\*6, 10 n.14 (M.D. Fla. Sept. 19, 2025) (dismissing defamation claim based on report with disclaimer "at the end," explaining "courts should consider the context in which the statement was published and accord weight to cautionary terms used … [in] the statement").[5]

DoubleVerify's motivation to avoid the full Report is obvious: The conclusion section directly refutes its proposed implications. Mot. 11. It underscores that the Report does not assess how often ads are served on bots, either overall or via specific vendors; does not recommend any particular vendor's services over another; and does not determine which stakeholder (if any) is "responsible" for any particular ad being served on a bot. Report at 279-81. Further, the conclusion section specifically acknowledges it is "possible that brands were not charged for some of the ads served to bots" referenced in the Report. *Id.* at 289. Dismissal is appropriate where, as here, Plaintiffs fail to "allege any facts that negate the supposed implied facts of [the Report]" and "[i]nstead, … allege only their own opinion," *RE Carroll Mgmt. Co. v. Dun & Bradstreet, Inc.*, 2025 WL 415743, at \*3 (4th Cir. Feb. 6, 2025), and the Report itself "disclaimed …. th[e defamatory] implication," *Lokhova v. Halper*, 995 F.3d 134, 146 (4th Cir. 2021).

**D. Adalytics' Analysis Is Protected Opinion Based on Disclosed, Undisputed Facts**

Courts routinely decline to referee the interpretation of technical or scientific data, holding that such disputes are fundamentally opinion based on disclosed facts and should be litigated through "[m]ore papers, more discussion, better data, and more satisfactory models"—not defamation lawsuits. *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994); Mot. 13.

Unlike the cases cited by Plaintiffs, the Report does not promote any product or tout

---

[5] *Elliott v. Bd. of Tr. of Montgomery Cnty. Cmty. Coll.*, 104 Md. App. 93, 105-6 (1995) (Opp. 14) involved a contractual dispute (not defamation) and did not turn on the location of the disclaimer.

Adalytics' services; as in *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013), it "draws conclusions from non-fraudulent data, based on accurate descriptions of the data and methodology underlying those conclusions."  Nor was Adalytics required to include every fact Plaintiffs consider "crucial," such as post-serve offerings.[6]  *See* Opp. 18.  Once again, *ONY* is instructive:  The court rejected the plaintiff's argument that the challenged statements were false because "competent scientists would have included variables that were available to the defendant authors but that were not taken into account in their analysis."  *ONY, Inc.*, 720 F.3d at 497.

Here, Adalytics "clearly disclose[d] the facts upon which its assessment"—that ads whose source code included references to "charge-allDoubleVerifyBotAvoidance" were served to bots— "is based."  *See Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704 (D. Md. 2000), *aff'd*, 11 F. App'x 99 (4th Cir. 2001).  The Report "does not imply that there are other, unstated facts supporting" Adalytics' conclusions.  *See Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995); *see also Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 176 (S.D.N.Y. 2024) (rejecting argument that challenged statement was false based on "omission of facts" and "context").  Accordingly, Adalytics' conclusions based on the undisputed data are not actionable.

### E.  DoubleVerify Cannot Plausibly Plead Adalytics Acted with Actual Malice

#### 1.  *DoubleVerify Is at Least a Limited-Purpose Public Figure*

DoubleVerify does not dispute that the Fourth Circuit's five-factor test is the applicable standard for determining public figure status.  Mot. 14; Opp. 18-19.  While DoubleVerify claims public-figure status "is not susceptible to resolution on a motion to dismiss," Opp. 18, courts in

---

[6] DoubleVerify concedes that not all of its customers utilize both its post-bid and pre-bid services. *See* Compl. ¶ 33.

this Circuit regularly determine a plaintiff is a public figure on a motion to dismiss where, as here, the basis for that assessment is clear from the pleadings and material subject to judicial notice. *See, e.g.*, *Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 724 (D. Md. 2021) (determining on motion to dismiss that plaintiff was a public official); *Chapin*, 993 F.2d at 1092 n.4 (holding plaintiff was a public figure in affirming dismissal).

As in *Chapin*, DoubleVerify's status as a public figure is "irretractably admitted on the face of the complaint." 993 F.2d at 1092 n.4. DoubleVerify, a public company listed on the New York Stock Exchange, Compl. ¶ 15, describes itself as "an industry leader in protecting advertisers against both fraud and waste," *id*. ¶ 5, who claims to "sets the standard for trust and transparency in combatting IVT waste in the online advertising industry," *id.* ¶ 41. It trumpets its "established track record of discovering and disclosing to the public the most sophisticated ad fraud schemes in the industry"; touts its establishment of a "multidisciplinary Fraud Lab composed of data scientists, analysts, cybersecurity researchers and developers"; and cites press coverage about its achievements in uncovering alleged "massive ad fraud scheme[s]." *Id.* ¶ 40 & n.10. And notably, the Complaint ***only*** pleaded the actual malice standard—not the lower negligence standard. *Id.* ¶ 85. "The public figure that 'vaunts [its] spotless record and sterling integrity cannot convincingly cry 'Foul!' when an opponent or an industrious reporter attempts to demonstrate the contrary.'" *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1283 (M.D. Ala. 2019), *aff'd,* 6 F.4th 1247 (11th Cir. 2021). DoubleVerify cannot rewrite its Complaint via opposition brief to reinvent itself as a private figure.

DoubleVerify's attempt to rebut the five factors fares no better. On the first factor, DoubleVerify tries to downplay its media access, suggesting its press releases were not picked up by the media. Opp. 19. But the Complaint cites multiple news articles that reported on and/or

linked to those press releases. *See* Compl. ¶ 66 (citing *Wall Street Journal* article, which quotes and links to DoubleVerify press releases about the Report); *id.* ¶ 67 n.25 (citing March 28, 2025 *AdExchanger* article, which quotes and links to DoubleVerify press release); *id.* (citing March 31, 2025 *AdExchanger* article that links to DoubleVerify press release). This is precisely the sort of media access that courts rely on in finding plaintiffs to be public figures. *Nat'l Life Ins. Co. v. Phillips Publ'g, Inc.*, 793 F. Supp. 627, 635-36 (D. Md. 1992) (insurance company that "sen[t] out a multitude of press releases"); *Contemp. Mission, Inc. v. N.Y. Times Co.*, 665 F. Supp. 248, 264 (S.D.N.Y. 1987) (nonprofit whose members "issu[ed] press releases … designed to advance their positions with respect to the controversy"), *aff'd*, 842 F.2d 612 (2d Cir. 1988).

The remaining factors also establish DoubleVerify as a limited public figure. Based on its own Complaint, DoubleVerify has unquestionably injected itself into an ongoing public controversy over digital advertising fraud and sought to influence its outcome (Factors 2 and 3), which pre-dated the Report (Factor 4) and continues to this day (Factor 5). Mot. 14-15. DoubleVerify does not dispute that such a public controversy exists, or that it has thrust itself into that controversy. Instead, it tries to re-define the relevant "public controversy" as "the controversy Adalytics started by defaming DoubleVerify." Opp. 19-20. Courts reject similar attempts to "shrink all controversies to the specific statements of which a plaintiff complains." *Nat'l Life Ins. Co.*, 793 F. Supp. at 637-38. *See, e.g.*, *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 322-23 (4th Cir. 2008) (finding relevant controversy to be broader public "debate on the threat from bioterrorism," rejecting plaintiff's narrower framing of "specific anthrax mailings in 2001"); *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 668-69 (4th Cir. 1982) (considering larger controversy over military's use of dolphins, not just narrow question of who leaked information).

But even if the public controversy *was* limited to the Report itself, DoubleVerify is still a

9

limited public figure. DoubleVerify chose to publish its "Prebuttal" months before the Report was published. That Prebuttal plainly sought to influence the public controversy by attempting to discredit Adalytics and present DoubleVerify's side of the story. *See, e.g.*, *Stepnes v. Ritschel*, 663 F.3d 952, 964 (8th Cir. 2011) (plaintiff was a limited public figure where he "us[ed] a public relations firm to 'shape the message' and 'turn a negative spin into a positive spin'"); *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1081 (N.D. Cal. 2012) (plaintiff was a limited public figure where his press release "created an issue of public controversy before defendant's allegedly defamatory statements"); *Krawatsky v. Avrunin*, 2025 WL 1540394, at *24 n.27 (Md. App. Ct. May 30, 2025) (plaintiff was a limited public figure where he engaged a PR firm to post favorable press in order to silence or minimize negative online posts). And all of the reasons to consider DoubleVerify a public figure, as laid out in its Complaint, persist to this day. Mot. 15.

## 2. *The Complaint Fails to Plausibly Plead Actual Malice*

The Fourth Circuit holds that "'the usual standards of notice pleading apply in defamation cases,' and so a plaintiff must articulate 'a "plausible" claim for relief'"—which includes sufficiently alleging "actual malice … as matter of law." *Edwards v. Am. Med. Ass'n, Inc.*, 2025 WL 444424, at *4-5 (4th Cir. Feb. 10, 2025); *see also Fairfax v. CBS Corp.*, 2 F.4th 286, 293 (4th Cir. 2021) (affirming grant of motion to dismiss where plaintiff failed to allege actual malice); *Harvey*, 520 F. Supp. 3d at 724 (same).

DoubleVerify claims its conclusory "averment of knowledge that the statement was false is a sufficient allegation of actual malice" to defeat a motion to dismiss. Opp. 21. But that is not the law. "[A]fter *Iqbal* and *Twombly,* every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual

10

malice." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (affirming dismissal for failure to plausibly plead actual malice). The Fourth Circuit rejected such "formulaic recitations" of the legal standard, explaining that alleging statements "'were known by [defendants] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is … [the] kind of conclusory allegation … that *Twombly* and *Iqbal* rejected." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012).[7]

While DoubleVerify is correct that "circumstantial evidence" can establish actual malice, it still has to add up to "a plausible inference" that the defendant published the statement with the requisite "knowledge of falsity," *Fairfax*, 2 F.4th at 293—not just "tend[] to show that the defendant published in bad faith," *Tavoulareas v. Piro*, 817 F.2d 762, 789 (D.C. Cir. 1987). Indeed, "[i]t would be sadly ironic for judges in our adversarial system to conclude … that the mere taking of an adversarial stance is antithetical to the truthful presentation of facts." *Id.* at 795. The types of circumstantial evidence found to be acceptable include "evidence of fabrication, evidence that the story was 'so inherently improbable that only a reckless man would have put [it] in circulation,' and evidence that it was 'based wholly on an unverified anonymous telephone call or some other source that the defendant had obvious reasons to doubt.'" *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 143-44 (D.D.C. 2017) (quoting *Tavoulareas*, 817 F.2d at 790).

DoubleVerify identifies no such allegations here. Nor does it successfully distinguish any

---

[7] Plaintiffs cite *Colossus* and *Solomon Foundation* to claim that such conclusory pleading is sufficient for actual malice. But both decisions relied on cases **pre-dating** *Iqbal* and *Twombly* to accept such allegations, and therefore do not represent the applicable law. *See Solomon Found.*, 2023 WL 3058321, at *7; *Colossus Media, LLC v. Adalytics Rsch., LLC*, No. CV DKC 24-1402, 2025 WL 712986, at *10 (D. Md. Mar. 5, 2025).

of the cases holding that its various theories—about Adalytics' general industry expertise, motive, preconceived narrative—cannot show actual malice as a matter of law, since DoubleVerify fails to allege any specific **_facts_** that would show the requisite knowledge of falsity.  Mot. 16-18. Rather, its theory of actual malice boils down to a complaint that Adalytics knew about its "post-serve" offerings from the Prebuttal but did not discuss them in the Report.  But "the fact that an article is one sided or fails to include as many positive features about the subject as negative ones has no tendency to prove that the publisher believed it to be false."  *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 285-86 (S.D.N.Y. 2013) (allegation that article focused only on certain examples and "ignore[d] [plaintiff's] many satisfied clients" did not plead actual malice), *aff'd*, 867 F.3d 541 (2d Cir. 2015).  Thus, a defendant's alleged "failure to include every relevant and potentially positive detail in its publication is insufficient to establish actual malice."  *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 527 (6th Cir. 2007).[8]

## II.    DOUBLEVERIFY FAILS TO STATE A LANHAM ACT CLAIM

### A.  The Report Is Not a "Commercial Advertisement"

DoubleVerify does not dispute that the Report is not "core commercial speech."  Mot. 20; Opp. 25.  It also does not dispute that the Report is not conceded to be an advertisement (*Bolger* Factor 1) and that it does not refer to a specific product or service (*Bolger* Factor 2).  Mot. 21.

For the third *Bolger* factor—whether the speech is "economically motivated"— DoubleVerify relies again on the *Colossus* decision, claiming it is "consistent with others recognizing that articles posted on websites aimed at driving commercial traffic are commercial

---

[8] *See also, e.g.*, *Deripaska*, 282 F. Supp. 3d at 143 (allegation that reporters "intentionally omit[ted] 'crucial background'" about local politics "simply is not enough to make out a plausible case of actual malice"); *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 981 F. Supp. 112, 122 (E.D.N.Y. 1997) ("The fact that [defendant] may not have included certain favorable statements regarding plaintiffs, in and of itself, cannot support their defamation claim.").

speech." Opp. 26. But none of Plaintiffs' cited cases actually stand for that proposition. Instead, they address classic advertising scenarios where a seller touts its own product and denigrates its direct competitor's product. *See Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, No. 16 CIV. 3645 (KPF), 2017 WL 3129799, at \*8 (S.D.N.Y. July 21, 2017) (online press release that "tout[ed] the benefits of Defendant's product over Plaintiff's competing product"); *Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1184 (D. Colo. 2015) (online "gripe site" operated by company that sold pre-fabricated steel buildings, which published alleged complaints about its competitor's pre-fabricated steel buildings); *Precision IBC, Inc. v. PCM Cap., LLC*, No. CIV.A. 10-00682-CG-B, 2011 WL 5444114, at \*12 (S.D. Ala. Oct. 17, 2011) (defendant made knowingly false statements about the "quality of Chinese-made tanks" to suggest that "Plaintiff's Chinese-made tanks were inferior to Defendants' tanks which were not made in China"), *adopting R. & R.*, 2011 WL 5444111 (S.D. Ala. Nov. 10, 2011).

In contrast to all of these cases, the Complaint states that "Adalytics does not offer pre-bid services." Compl. ¶ 33; *see also* Opp. 23. A public research report about a product offered widely throughout the industry does not become commercial advertising simply because Adalytics also has clients who pay for its advice on ad campaigns.

Adopting DoubleVerify's expansive theory would make nearly everything published online commercial speech. Courts reject such a "broad definitional sweep." *Nat'l Life Ins.*, 793 F. Supp. at 643. Speech is not "commercial" simply because it is published by a for-profit company, or even sold to customers. Mot. 21-23. DoubleVerify does not distinguish the cases cited in the Motion; instead, it invents a distinction between "newspapers and magazines" and anyone else. Opp. 27. DoubleVerify cites no legal basis for this novel theory, and courts routinely find challenged statements by for-profit, non-media defendants not to be "commercial speech"

under the Lanham Act.  Mot. 21-23.

### B.  Plaintiffs Fail to Allege the Other Elements of a False-Advertising Claim.

As explained above (§§ I.B-C), Plaintiffs do not allege any false or misleading statement of fact.  And Plaintiffs' generic allegations are insufficient to plead for a Lanham Act claim.  *See* Compl. ¶¶ 69-70.  Unlike the Complaint here, the cases cited by DoubleVerify included specific allegations of harm.  *See, e.g.*, *Bennett v. Zydron*, 2017 WL 9478505, at *8 (E.D. Va. Aug. 17, 2017) ("The complaint describes, in detail, how defendants falsely traded on Mr. Bennett's work and claimed it as their own."); *AvePoint, Inc. v. Power Tools, Inc.*, 981 F. Supp. 2d 496, 521 (W.D. Va. 2013) (challenged statements "implie[d] that the quality [of plaintiff's products] is so poor that customers are ending deals early in order to purchase a competing product").  Here, Adalytics documented ***categorical***, ***industry-wide*** observations about pre-bid bot avoidance services offered by major ad-tech vendors—not specific to DoubleVerify.  Plaintiffs' vague allegations of harm to its "business reputation" are therefore not sufficient.

### III.   DOUBLEVERIFY'S REMAINING TORT CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs do not dispute that their tag-along state tort claims—injurious falsehood, unfair competition, and tortious interference—are wholly duplicative of their defamation claim and cannot survive independently if it is dismissed.  Opp. 29-30.  Each also fails for separate reasons:

**Injurious Falsehood.** As explained above, Plaintiffs do not allege actual malice.  § I.E.2.  And their conclusory allegations of pecuniary damages—completely disconnected from any facts suggesting that the Report itself proximately caused any harm—do not plead the requisite harm.  Compl. ¶¶ 95-96.  As Adalytics explained (and DoubleVerify does not dispute), an alleged decline in stock price is not sufficient.  Mot. 28.  Nor are alleged costs to "counteract" the alleged defamation.  S*ee Synygy, Inc. v. ZS Assocs., Inc.*, 110 F. Supp. 3d 602, 620 (E.D. Pa. 2015) (holding that rehabilitation costs alone are not sufficient to establish pecuniary loss).

**Tortious Interference.**  DoubleVerify is correct that Maryland recognizes two types of tortious interference claims.  But the difference between them is whether the harm is tied to breach of a specific third-party contract (i.e., tortious interference with contract), or whether it is harm to an existing business relationship absent a breach of contract (i.e., tortious interference with business relations).  *See K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 155 (1989).  But DoubleVerify is still required to identify the "customers" and "industry partners" (Compl. ¶ 80) the Report allegedly targeted and interfered with.  *See K & K Mgmt., Inc.*, 316 Md. at 154.  Because it fails to do so, this claim must be dismissed.  *See, e.g.*, *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009) (affirming dismissal of tortious interference claim where the "complaint fails to identify a single, specific customer that [plaintiff] either lost or could have acquired but for [defendant's] conduct"); *Advanced Oral Techs., L.L.C. v. Nutrex Rsch., Inc.*, 2011 WL 1080204, at *4 (D.N.J. Mar. 21, 2011) ("generalized claims of 'lost business' will not support a tort[i]ous interference action").

**Unfair Competition**.  As Adalytics explained, "unfair competition is not a 'fallback tort' that can save [a plaintiff] from its failure to establish tortious interference" or any other tort claim. *Command Tech., Inc. v. Lockheed Martin Corp.*, 2015 WL 6470277, at *8 (Md. Ct. Spec. App. Oct. 27, 2015); Mot. 29.  Because DoubleVerify does not distinguish its unfair competition claim from any of the others, it should be dismissed along with them.

**CONCLUSION**

For these reasons, the Court should dismiss the Complaint with prejudice.

Dated:  October 22, 2025                          Respectfully submitted,

                                                  */s/ Alison Schary*
                                                  Alison Schary (#18687)
                                                  Chelsea T. Kelly (#31561)
                                                  Marietta Catsambas (#31794)

15

Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
(202) 973-4248
alisonschary@dwt.com
chelseakelly@dwt.com
mariettacatsambas@dwt.com

*Attorneys for Defendant*
*Adalytics Research, LLC*

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of October, 2025, I electronically served a copy of the foregoing document on all parties receiving CM/ECF notices in this case.

Dated: October 22, 2025

*/s/ Alison Schary*
Alison Schary (#18687)